STATE OF NORTH CAROLINA v. WILKES LYDELL KING

No. 305A85

(Filed 18 February 1986)

1. **Constitutional Law § 63; Jury § 7.11— death qualified jury—no error**
   The practice of death qualifying the jury in a first degree murder case does not result in the selection of a jury biased in favor of the prosecution on the issue of guilt and does not deprive a defendant of his right to be tried by a representative cross-section of the community.

2. **Homicide §§ 4.2, 21.6— felony-murder rule—felony of discharging firearm into occupied property**
   The crime of discharging a firearm into occupied property may properly serve as the underlying felony supporting a first degree murder conviction under the felony-murder rule.

3. **Homicide § 4.2— felony-murder rule—refusal to adopt merger doctrine**
   The Supreme Court refused to adopt the "merger doctrine" which would bar the application of the felony-murder rule whenever the predicate felony directly results in or is an integral element of the homicide.

4. **Homicide § 4.2— felony-murder rule—underlying felony—absence of firearm use not required**
   The felony-murder statute, N.C.G.S. § 14-17, will not be interpreted to mean that only those offenses which are expressly set out and felonies where the use of a deadly weapon is not an element of the felony may serve as underlying felonies for purposes of the felony-murder rule.

BEFORE *Ross, J.,* at the 18 February 1985 Criminal Session of Superior Court, FORSYTH County, defendant was convicted of two counts of first-degree murder. Following a sentencing hearing conducted pursuant to N.C.G.S. § 15A-2000, the jury found the existence of both aggravating and mitigating circumstances and concluded that, although the mitigating circumstances were insufficient to outweigh the aggravating circumstances, the aggravating circumstances were not sufficiently substantial to call for the imposition of the death penalty. Based upon the jury's

recommendation, the trial court entered judgment sentencing the defendant to two consecutive terms of life imprisonment. The defendant appeals as a matter of right pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court 17 December 1985.

*Lacy H. Thornburg, Attorney General, by William N. Ferrell, Jr., Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by David .W. Dorey, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

The State's evidence tended to show that, for a time during high school, the defendant was a boyfriend of Angela Roberts, but that relationship ended at some point. Later, in 1982, the defendant threatened and assaulted Angela. The incident which is the subject of this case occurred in 1984.

Jackie Lee Transou, a neighbor of the Roberts, testified that on the evening of 25 September 1984, the defendant entered her home carrying a shotgun. Without saying anything, he proceeded to look around Transou's room and then left.

Angela Roberts testified that on that evening of 25 September, she was at Jackie Transou's house. She stated that, as she came out of the bathroom, she saw the defendant in the house. When she saw that he was holding a shotgun, she went out the back door and ran home. The defendant, however, followed Roberts and shot at her as she reached the porch of her house. Present at the Roberts home were Angela's sisters, Bridgette and Toni, her mother, Jean, and two friends, Reginald Flint and Carl Williams. Angela, along with her mother, Jean, and sister Toni, ran to a back bedroom where Angela hid under a bed. Angela then heard two shots followed by her sister Bridgette screaming that she had been shot in the back. Two shots were then fired through the bedroom window striking Angela's mother and sister Toni. Angela testified that she then heard the defendant walking through the house, calling her names, and asking where she was. Shortly thereafter, the defendant left.

Angela Roberts' sister, Toni, Reginald Flint, and Carl Williams gave testimony that was substantially similar to Angela's.

Toni Roberts and Reginald Flint were wounded during the attack and were hospitalized.

Angela's mother died from chest wounds which resulted from the shotgun blast through the bedroom window. Angela's sister Bridgette died from head and chest wounds inflicted from a shotgun blast fired through the bathroom window.

The defendant took the stand and testified that on the evening in question, he was visiting his grandmother. He denied having any knowledge of the events occurring at the Roberts' house on 25 September 1984.

The jury found the defendant guilty of first-degree murder under the felony-murder rule, with the felony of discharging a firearm into occupied property, N.C.G.S. § 14-34.1, serving as the underlying felony. Following a sentencing hearing, the jury recommended that the defendant be sentenced to life imprisonment for each of the two murders, and the trial court entered judgments of consecutive life sentences.

[1] The defendant initially argues that the trial court erred by allowing the State to "death-qualify" the jury prior to the guilt-innocence phase of his trial. He contends that this practice results in the selection of a jury biased in favor of the prosecution on the issue of guilt. We have repeatedly rejected this argument. *E.g., State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985); *State v. Noland*, 312 N.C. 1, 320 S.E. 2d 642 (1984), *cert. denied*, --- U.S. ---, 84 L.Ed. 2d 369, *reh'g denied*, --- U.S. ---, 85 L.Ed. 2d 342 (1985); *State v. Maynard*, 311 N.C. 1, 316 S.E. 2d 197, *cert. denied*, --- U.S. ---, 83 L.Ed. 2d 299 (1984). He also contends that the practice of "death-qualifying" the jury deprives defendants of their right to be tried by a representative cross-section of the community. We have consistently rejected this argument as well. *E.g., State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144 (1983); *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L.Ed. 2d 1031 (1983). We decline the defendant's request to reconsider these decisions. This assignment of error is overruled.

[2] The defendant next contends that N.C.G.S. § 14-34.1, discharging a firearm into occupied property, may not properly

serve as the underlying felony supporting a first-degree murder conviction under the felony-murder rule. Under N.C.G.S. § 14-17, a defendant may be convicted of first-degree murder for a murder "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary *or other felony committed or attempted with the use of a deadly weapon.*" (Emphasis added.) We have specifically held that the offense of discharging a firearm into occupied property may serve as the underlying felony for a first-degree murder conviction based on the felony-murder rule. *E.g., State v. Mash,* 305 N.C. 285, 287 S.E. 2d 824 (1982); *State v. Wall,* 304 N.C. 609, 286 S.E. 2d 68 (1982).

[3] The defendant urges this Court to adopt the "merger doctrine" to bar the application of the felony-murder rule to homicides committed during the perpetration of the felony of discharging a firearm into occupied property. Defendant argues that the "merger doctrine" prohibits the application of the felony-murder rule whenever the predicate felony directly results in or is an integral element of the homicide. *See* Comment, *The Merger Doctrine as a Limitation on the Felony-Murder Rule: A Balance of Criminal Law Principles,* 13 Wake Forest L. Rev. 369 (1977). In *State v. Wall,* 304 N.C. 609, 286 S.E. 2d 68 (1982), we were asked to adopt the "merger doctrine" but declined to do so, stating:

> Defendant argues that this Court should adopt the merger doctrine espoused in *People v. Ireland,* 70 Cal. 2d 522, 450 P. 2d 580, 75 Cal. Rptr. 188 (1969), which would bar his conviction of first-degree felony murder based upon the underlying felony of discharging a firearm into an occupied vehicle. The *Ireland* case held that in California "a . . . felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (Emphasis in original.) *Id.* at 539, 450 P. 2d at 590, 75 Cal. Rptr. at 198. The felony of discharging a firearm into occupied property, G.S. 14-34.1, appears to be such an integral part of the homicide in instant case as to bar a felony-murder conviction under the California merger doctrine. This Court, however, has expressly upheld convictions for first-degree felony murder based on the underlying felony of dis-

charging a firearm into occupied property. *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976); *State v. Williams*, 284 N.C. 67, 199 S.E. 2d 409 (1973); *State v. Capps*, 134 N.C. 622, 46 S.E. 730 (1904). We elect to follow our own valid precedents.

304 N.C. at 612-13, 286 S.E. 2d at 71. The defendant has presented no argument to warrant a change in our position.

[4] The defendant also contends that the General Assembly did not intend to include the offense of discharging a firearm into oc-cupied property as a possible felony which would support first-degree murder under the felony-murder rule. He argues that the felony-murder language contained in N.C.G.S. § 14-17 should be in-terpreted to mean that only those offenses which are expressly set out and felonies where the use of a deadly weapon is not an element of the felony may serve as underlying felonies for pur-poses of the felony-murder rule. We reject this argument. As this Court noted in *Wall*:

> Defendant futher [sic] contends that the legislature did not intend that the discharging of a firearm into occupied property be included as an underlying felony for the pur-poses of the felony-murder rule. In 1977 G.S. 14-17 was re-vised by the General Assembly. The earlier statute had defined felony murder as a killing "committed in the perpe-tration or attempt to perpetrate any arson, rape, robbery, burglary, *or other felony*." (Emphasis added.) 1949 N.C. Sess. Laws Ch. 299 § 1. This vague language required judicial in-terpretation, which this Court provided by interpreting the "other felony" language in G.S. 14-17 to refer to any felony which "creates any substantial foreseeable human risk and actually results in the loss of life." *State v. Thompson*, 280 N.C. 202, 211, 185 S.E. 2d 666, 672 (1972). The revised statute expanded the listed felonies and limited the "other felonies" which would support a charge of felony murder to those "committed or attempted with the use of a deadly weapon." 1977 N.C. Sess. Laws Ch. 406 § 1.

> Where the language of a statute is clear and unambigu-ous, there is no room for judicial construction, and the courts must give the statute its plain meaning. *State v. McMillan*, 233 N.C. 630, 65 S.E. 2d 212 (1951). Contrary to defendant's contentions, the unambiguous language of the 1977 revision

State v. King

makes it clear that felonies "committed or attempted with the use of a deadly weapon" will support a conviction of first-degree murder under the felony-murder rule.

Defendant notes in his brief that England, the birthplace of the felony-murder doctrine, abolished the rule by statute in 1957. We believe this approach represents the proper response to dissatisfaction with a statutory rule of law. Our General Assembly remains free to abolish felony murder or, as the Courts did in California, to limit its effect to those other felonies not "included in fact within" or "forming an integral part of" the underlying felony. As recently as 1977, however, our legislature chose to reaffirm and clarify the offense. We do not believe it is the proper role of this Court to abolish or judicially limit a constitutionally valid statutory offense clearly defined by the legislature.

304 N.C. at 614-15, 286 S.E. 2d at 72. If the legislature feels the need to restrict the list of felonies which may serve as the underlying felony for purposes of the felony-murder rule, it may do so. Until then, we must accord the felony-murder language contained in N.C.G.S. § 14-17 its plain meaning.

The defendant received a fair trial, free from prejudicial error.

No error.