STATE OF NORTH CAROLINA v. WILLIAM EARL CLARK

No. 341A88

(Filed 7 December 1989)

1. **Homicide § 21.6 (NCI3d); Weapons and Firearms § 3 (NCI3d) — felony murder — discharging firearm into occupied dwelling — sufficiency of evidence**

    There was sufficient evidence that defendant intentionally discharged a firearm into a residence that he knew was occupied to support his conviction of first degree murder under the felony murder rule where the State's evidence tended to show that defendant came to the home of his former girlfriend while the victim was visiting her; defendant and the girlfriend argued and defendant left the house in an angry manner; the girlfriend heard an automobile door slam followed by a gunshot; the shot came through the front door and struck the victim in the chest; the girlfriend ran from the house and saw defendant driving slowly away; she stopped defendant and asked him if he knew he had shot the victim, and defendant did not answer but drove away; and defendant volunteered

STATE v. CLARK

[325 N.C. 677 (1989)]

incriminating statements after his arrest, including a statement that "I just don't know why I did what I did." N.C.G.S. § 14-34.1.

**Am Jur 2d, Homicide § 94.**

2. **Homicide § 12 (NCI3d)— murder indictment—theories of prosecution**

A murder indictment in the form prescribed by N.C.G.S. § 15-144 will support a verdict finding defendant guilty of first degree murder upon any of the theories set forth in N.C.G.S. § 14-17.

**Am Jur 2d, Homicide § 211.**

3. **Homicide § 25 (NCI3d)— first degree murder—election of theories not required**

The State is not required at any time to elect a theory upon which it will proceed against the defendant on the charge of first degree murder, and it is proper for the trial court to submit the issue of defendant's guilt of that charge to the jury on each of the theories of first degree murder supported by substantial evidence presented at trial.

**Am Jur 2d, Homicide § 211.**

4. **Homicide § 31 (NCI3d)— first degree murder—specification of theory in verdict**

Rather than have the jury render a general verdict if it finds the defendant guilty of first degree murder when more than one theory is submitted, the better practice is for the trial court to have the jury specify the theory or theories upon which it finds first degree murder to have been established beyond a reasonable doubt.

**Am Jur 2d, Homicide § 542.**

5. **Homicide § 30.3 (NCI3d)— murder prosecution—instruction on involuntary manslaughter not required**

The trial court did not err in failing to instruct the jury with regard to a possible verdict of involuntary manslaughter in a murder prosecution in which the trial court's instructions required the jury to find defendant guilty of first degree murder under the felony murder rule or to find him not guilty where the State's evidence tended to show that defendant intentional-

ly shot into an occupied dwelling and caused the death of the victim, and defendant's evidence was that he did not fire a gun at any time on the night in question.

**Am Jur 2d, Homicide § 531.**

**6. Homicide § 4.2 (NCI3d) — felony murder — discharging firearm into occupied property as underlying felony**

The "merger doctrine" will not be applied to bar application of the felony murder rule to homicides committed in the perpetration of the felony of discharging a firearm into occupied property.

**Am Jur 2d, Homicide § 73.**

Justice MITCHELL concurring in result.

Justice WEBB joins in the concurring opinion.

APPEAL of right by the defendant from judgment entered by *Reid, J.,* on 3 March 1988, in Superior Court, LENOIR County, sentencing the defendant to life imprisonment for murder in the first degree. Heard in the Supreme Court 11 April 1989.

*Lacy H. Thornburg, Attorney General, by Jane P. Gray, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia Devine, Assistant Appellate Defender, for the defendant-appellant.*

FRYE, Justice.

Defendant was charged in a proper bill of indictment containing two counts. Count I charged defendant with feloniously discharging a firearm into an occupied dwelling. Count II charged defendant with murder. Defendant was tried in a noncapital trial on the charge of murder and entered a plea of not guilty. At the conclusion of all the evidence at trial, the trial court instructed the jury concerning the law as to murder in the first degree by reason of a killing during the perpetration of a felony. The trial court further instructed the jury that it would find defendant guilty of first degree murder on the basis of this theory or find him not guilty. Acting pursuant to these instructions, the jury returned a verdict finding defendant guilty of first degree murder. The trial court entered judgment sentencing defendant to life imprisonment, and defendant appealed to this Court.

On appeal, defendant brings forth three assignments of error pertaining to the following: (1) whether the trial court erred in failing to dismiss the first degree murder charge under the felony murder rule because there was insufficient evidence to convict defendant of the underlying felony; (2) whether the trial court erred in refusing to instruct the jury that it should consider a possible verdict finding defendant guilty of involuntary manslaughter; and (3) whether this Court should reject the felony murder rule for cases in which the underlying felony is the offense of discharging a firearm into occupied property. We find no error in defendant's trial.

Evidence for the State tended to show in pertinent part that on the night of Sunday, 22 March 1987, Johnny Bryant was shot and killed while visiting at the home of Jacquelyn Foulks. Foulks and defendant William Earl Clark had been "going together" for five years prior to the shooting.

Foulks, a witness for the State, testified that on the afternoon of 22 March 1987, she and defendant had gone out together. They had been together from about mid-day until that night when they went with friends to a club. They had been drinking beer that day and fighting and arguing all evening. Outside the club, the victim Johnny Bryant observed defendant twisting Foulks' arm until she went down on her knees. Bryant and defendant argued over the incident, but Foulks saw no weapons during this confrontation. Bryant, Foulks, and defendant went back into the club. At about 11:00 p.m., the three of them came back outside the club. After knocking a beer out of Foulks' hand, defendant took some of her clothes out of the trunk of his automobile, put them on the ground, and drove off.

Foulks testified that Bryant gave her a ride home. Bryant accompanied Foulks inside her house. After she put her child to bed, Foulks went to her room to change clothes and heard an automobile drive up. Defendant was the driver of the automobile. She let him inside the house, and he sat on the couch. He was "still upset and high" and asked, "What is this, a new boyfriend?" Foulks replied that she and Bryant were just friends. After some further conversation, during which she told defendant that they "were through, it was over with—through," defendant got up and left. Foulks followed defendant to the door and closed and locked it as he left the house.

Bryant stood up as Foulks accompanied defendant to the door. Foulks never heard defendant's automobile pull off or the motor start. She heard a slam, then a gunshot. She saw Bryant stagger toward her kitchen where he grabbed the kitchen table and fell. He had "a big hole in his chest" and blood was everywhere. Foulks testified that the gunshot came through her closed front door. She ran out the front door of her house to get help and saw defendant driving slowly away from her house. She ran into the road, threw up her hands and told defendant to stop. She asked him if he realized that he had shot Bryant. Defendant did not answer, but he jumped out of his automobile and looked at Foulks. Then he got back into the automobile and drove off. Foulks ran to her neighbor's house for help.

Raymond Becton Fields, a neighbor of Foulks, testified that he was awakened about midnight on the date of the shooting incident by Foulks, who was hysterical. She told him that a friend of hers had been shot and that "Bro shot him." He testified that he went with Foulks to her house and saw the victim. He checked the victim Bryant for a pulse and, finding none, told Foulks that Bryant was dead. Fields also testified that he noticed a hole about the size of a finger in the front door.

Captain Lester Gosnell of the Lenoir County Sheriff's Department arrived at Foulks' house shortly after the shooting. He examined the front door of Foulks' residence and observed a hole approximately one inch in diameter with visible black markings around the hole. After taking a statement from Foulks, Gosnell obtained a warrant for defendant's arrest. He then went to defendant's house and placed him under arrest.

Gosnell also testified that he advised defendant of his Miranda rights after defendant was taken into custody. Defendant told Gosnell that he did not want to answer any questions without a lawyer. During a thirty-five to forty-minute wait for the magistrate, the defendant said to Gosnell, "It don't take much to get in trouble but it takes a long time to get out, don't it?" Gosnell replied, "That's true." Later, defendant asked Gosnell, "[T]o be charged with first-degree murder, don't you have to aim at your target?" Gosnell responded, "I think so." Defendant then said, "I just don't know why I did what I did." Gosnell made no further reply but wrote down each of these comments.

Defendant testified at trial in his own behalf. He admitted that he and Foulks had an argument on 22 March 1987, but he denied having words with Bryant. He testified that he went to Foulks' house to make up with her, but he never went inside the house. He testified that he fell asleep in the automobile while he was parked in Foulks' driveway. He awoke hearing Foulks calling him, saying, "Bro, Bro, Bro, come help me. Johnny have been shot." Defendant then backed out of the driveway and went home. He denied shooting a gun at any time that night. He further testified that Foulks later told him that she had gotten the victim's gold necklace and his coat. Defendant testified that the only statements he made to Captain Gosnell were the following: "It don't take you long to get in trouble but it takes you a long time to get out"; and "[A]ny time they get you for murder you're in a world of trouble even though you don't know how you got in it."

[1] Defendant first contends that the trial court erred in denying his motions to dismiss the charge of first degree murder under the felony murder rule because there was insufficient evidence to convict him of the underlying felony of discharging a firearm into an occupied dwelling. In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence. *State v. Locklear*, 322 N.C. 349, 368 S.E.2d 377 (1988). The trial court should not grant a dismissal simply because there are contradictions and discrepancies in the evidence; the jury must resolve these conflicts. *State v. Workman*, 309 N.C. 594, 308 S.E.2d 264 (1983). The test that the trial court must apply is whether there is substantial evidence — either direct, circumstantial, or both — to support a finding that the crime charged has been committed and that defendant was the perpetrator. *State v. Locklear*, 322 N.C. at 358, 368 S.E.2d at 383. The term "substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). If there is substantial evidence of each essential element of the offense charged and that defendant was the perpetrator, then a motion to dismiss should be denied. We conclude that there was substantial evidence that defendant committed the offense of discharging a firearm into an occupied dwelling and, therefore, sufficient evidence of the felony required to sustain defendant's conviction of first degree murder under the felony murder rule.

The offense of discharging a firearm into an occupied dwelling is defined by statute, which provides in pertinent part that:

Any person who willfully or wantonly discharges or attempts to discharge:

. . . (2) a firearm into any building . . . while it is occupied is guilty of a Class H Felony.

N.C.G.S. § 14-34.1 (1986). The evidence must show that defendant intentionally shot into the occupied building. *State v. Williams*, 284 N.C. 67, 199 S.E.2d 409 (1973). Defendant's specific argument here is that the State failed to submit substantial evidence that he *intended* to shoot *into* the house. We disagree.

The evidence in the present case was sufficient, when viewed in the light most favorable to the State, to support a finding that defendant intentionally shot into a residence that he knew was occupied. Jacquelyn Foulks testified that defendant came to her home while Johnny Bryant was visiting her. Defendant and Foulks argued and he left the house in an angry manner. As Foulks was locking the door behind defendant, Johnny Bryant stood up. Foulks then heard what she thought was an automobile door slam followed by a gunshot. The shot came through the front door and hit Bryant in the chest. After trying to help the victim, Foulks ran out of the house and saw defendant driving slowly away. She stopped him and asked him if he knew that he had shot Bryant. Defendant did not answer but drove away. Furthermore, the State presented evidence through Captain Gosnell that defendant volunteered incriminating statements after he was arrested. We conclude that this was substantial evidence from which the jury could find that defendant did intend to shoot into the residence. *See id.* Therefore, defendant's argument is without merit.

[2] Defendant next assigns as error the trial court's failure to instruct the jury with regard to a possible verdict finding him guilty of involuntary manslaughter. The second count in the bill of indictment was in the form prescribed by N.C.G.S. § 15-144 and charged defendant with the murder of Johnny Bryant. A murder indictment in the form prescribed by N.C.G.S. § 15-144 will support a verdict finding the defendant guilty of first degree murder upon any of the theories set forth in N.C.G.S. § 14-17. *State v. Bush*, 289 N.C. 159, 221 S.E.2d 333, *death sentence vacated*, 429 U.S. 809, 50 L. Ed. 2d 69 (1976).

[3, 4] The State is not required at any time to elect a theory upon which it will proceed against the defendant on the charge of first degree murder, and it is proper for the trial court to submit the issue of the defendant's guilt of that charge to the jury on each of the theories of first degree murder supported by substantial evidence presented at trial. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983). Further, rather than have the jury render a general verdict if it finds the defendant guilty of first degree murder, the better practice is for the trial court to have the jury specify the theory or theories upon which it finds first degree murder to have been established beyond a reasonable doubt. *See State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569 (1979).

In the present case, the trial court submitted the murder charge for the jury's consideration only upon the theory of first degree murder under the felony murder rule. Both the trial court's instructions and the written verdict form given the jury required that the jury find defendant guilty of first degree murder under that theory or find him not guilty. The jury returned its verdict specifying that it found defendant guilty of first degree murder in the perpetration of a felony.

[5] Defendant contends that the jury should have been instructed with regard to a possible verdict finding him guilty of involuntary manslaughter. However, defendant presented no evidence to establish involuntary manslaughter. The State's evidence tended to show that defendant intentionally shot into an occupied dwelling causing the death of the victim. If the State's evidence is believed, then defendant is guilty of felony murder. Defendant's evidence was that he did not fire a gun at any time on the night in question. If defendant's evidence is believed, then he is not guilty of any degree of homicide. Since there was no evidence of involuntary manslaughter, the trial judge did not err in failing to submit involuntary manslaughter as a possible verdict. It is well settled that a jury should only be instructed with regard to a possible verdict if there is evidence to support it. *State v. Weeks*, 322 N.C. 152, 367 S.E.2d 10 (1988) (voluntary manslaughter); *State v. Hardy*, 299 N.C. 445, 263 S.E.2d 711 (1980) (breaking or entering); *see also State v. Wrenn*, 279 N.C. 676, 185 S.E.2d 129 (1971) (involuntary manslaughter).

[6] Finally, defendant contends that this Court should reconsider established law and apply the "merger doctrine" to bar application

STATE v. CLARK

[325 N.C. 677 (1989)]

of the felony murder rule to homicides committed in the perpetration of the felony of discharging a firearm into occupied property. We have rejected this application of the "merger doctrine" on several recent occasions. *See State v. King*, 316 N.C. 78, 340 S.E.2d 71 (1986); *State v. Mash*, 305 N.C. 285, 287 S.E.2d 824 (1982); *State v. Wall*, 304 N.C. 609, 286 S.E.2d 68 (1982). The defendant has offered no argument that persuades us to alter this well-settled law.

For the foregoing reasons, we hold that the defendant received a fair trial, free of prejudicial error.

No error.

Justice MITCHELL concurring in result.

The majority holds that the trial court properly refused to instruct on the lesser offense of involuntary manslaughter, because there was no evidence of involuntary manslaughter. For reasons which I have fully discussed in my dissenting opinion in *State v. Thomas*, 325 N.C. 583, 386 S.E.2d 555 (1989), involuntary manslaughter is not a lesser *included* offense of first-degree murder, when, as here, first-degree murder is submitted to the jury based *solely* upon the felony murder theory; this is true without regard to what the evidence may tend to show. *Because* the trial court—for whatever reason—permitted this case to go to the jury for its determination of whether the defendant was guilty of first-degree murder *only under the felony murder theory*, no instruction on lesser homicide offenses would have been proper. I concur only in the result reached by the majority.

Justice WEBB joins in this concurring opinion.