STATE OF NORTH CAROLINA v. JAMES JONES

No. 445A93

(Filed 29 July 1994)

1. **Homicide § 230 (NCI4th)— noncapital first-degree mur-
   der—sufficiency of evidence**

   The trial court did not err in a noncapital first-degree murder
   prosecution by denying defendant's motion to dismiss where the
   evidence taken in the light most favorable to the State shows that
   defendant and the victim met in a remote area on the evening of
   5 January 1992; defendant had in his possession a .38 caliber pis-
   tol and a box of .38 caliber ammunition; defendant carried the pis-
   tol with him into the victim's automobile; sometime during the
   meeting the victim was shot at close range, once in the head and
   once in the abdomen; the bullet taken from the automobile which
   had passed through the victim's abdomen was either a .38 or .357
   caliber and the gunpowder residue found on the victim and her
   sweater indicated the pistol was fired at close range; defendant's
   clothes contained no gunpowder residue, but evidence showed
   that the clothes had been cleaned prior to being given to law
   enforcement officers to be examined; differences in the defend-
   ant's statements and the omission of key information would per-
   mit but not require a jury to conclude that defendant tried to hide
   the existence of his pistol from police and that he had fabricated
   his description of an alleged murderer; testimony of a State's wit-
   ness would permit but not require a jury to conclude that defend-
   ant and the victim were having serious problems in their
   relationship; and there was evidence which would permit a jury
   to conclude that defendant had disposed of the murder weapon
   and was trying to determine his son's height and weight in order
   to provide the police with a description of someone else as the
   murderer.

   **Am Jur 2d, Homicide §§ 425 et seq.**

2. **Evidence and Witnesses § 1079 (NCI4th)— noncapital first-degree murder—requested instructions—defendant's refusal to give a statement, take a polygraph, or be hypnotized—denied—no prejudice**

There was no prejudicial error in a first-degree murder prosecution from the trial court's denial of defendant's request for an instruction where defendant specifically argued that the tendered instruction was necessary because of the State's repeated references to his exercise of his right to counsel and his refusal to submit to a polygraph test or to undergo hypnosis, but most of the alleged improper references do not constitute evidence supporting the tendered instruction; the manner in which defendant prepared statements submitted to investigators by his attorney and the content of the statements had independent significance apart from the fact that they necessarily revealed defendant's use of an attorney in dealing with the investigators; and there was no prejudicial error because a number of the allegedly improper references occurred during defendant's own cross-examination testimony where, responding to questions that did not involve his right to counsel, defendant voluntarily made reference to his use of an attorney; and the court conveyed to the jury that defendant's assertion of his right to counsel and his refusal to submit to a polygraph or to undergo hypnosis was not to affect its decision by repeatedly sustaining defendant's objections and on one occasion by instructing the jury to disregard the State's line of questioning.

**Am Jur 2d, Trial § 1184.**

3. **Evidence and Witnesses § 2477 (NCI4th)— noncapital murder—sequestration of witnesses—exception for lead officer—no abuse of discretion**

There was no abuse of discretion in a noncapital first-degree murder prosecution where the State requested that defendant's witnesses be sequestered, defendant contended that sequestration should be universal if ordered, and the State was granted an exception for its lead officer under N.C.G.S. § 8C-1, Rule 615(3). Although defendant contends that this constituted an endorsement of the officer's veracity and points to a change in the officer's testimony, the Supreme Court could not see a significant distinction in the change in testimony and it was not sufficient evidence of an abuse of discretion.

**Am Jur 2d, Trial § 61.**

**Prejudicial effect of improper failure to exclude from courtroom or to sequester or separate state's witnesses in criminal case. 74 ALR4th 705.**

4.  **Evidence and Witnesses § 876 (NCI4th)— noncapital first-degree murder—statements by victim—hearsay—state of mind exception**

    The trial court did not err in a noncapital first-degree murder prosecution by admitting testimony that the victim had said before her death that defendant was "very, very jealous," that "she was thinking about breaking up with him," and that she was "tired of his junk." The statements were evidence of the victim's state of mind and her state of mind regarding her relationship with defendant was relevant to show that the victim and defendant were having problems in their relationship.

    **Am Jur 2d, Evidence § 667.**

5.  **Evidence and Witnesses § 2227 (NCI4th)— noncapital first-degree murder—bullet lead composition—qualification of expert**

    The trial court did not abuse its discretion in a noncapital first-degree murder prosecution by admitting a witness to testify as an expert in the field of bullet lead composition where the witness had received a Bachelor of Science Degree in Physics from The University of North Carolina; had worked in the Elemental and Metals Analysis Unit of the FBI Laboratory for over thirteen years; had received a Master's Degree in Public Administration from Virginia Commonwealth University; and during the last twelve years most of his time at the FBI Laboratory had been spent examining bullets and determining the composition of bullets or pieces of lead.

    **Am Jur 2d, Expert and Opinion Evidence §§ 303 et seq.**

6.  **Evidence and Witnesses § 116 (NCI4th)— noncapital first-degree murder—evidence pointing to guilt of another— mere conjecture**

    The trial court did not err in a noncapital first-degree murder prosecution by sustaining the State's objection to the admission of evidence of the circumstances surrounding the sale of a farm owned by the victim's family after her death where the evidence

did not point directly or indirectly to the guilt of any other specific person or persons but created, at most, conjecture that defendant was not the perpetrator.

**Am Jur 2d, Evidence § 587.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Barnette, J.*, at the 17 May 1993 Criminal Session of Superior Court, Robeson County. Heard in the Supreme Court 12 May 1994.

*Michael F. Easley, Attorney General, by Clarence J. DelForge, III, Assistant Attorney General, for the State.*

*Cabell J. Regan for defendant-appellant.*

FRYE, Justice.

Defendant was indicted for the first-degree murder of Carolyn Britt. He was tried noncapitally by a jury, found guilty as charged, and sentenced to a mandatory term of life imprisonment. Defendant appealed to this Court asserting six assignments of error. We find no reversible error.

The evidence presented at trial tended to show the following facts and circumstances. Defendant lived in Red Springs with his girlfriend of fifteen years, Patricia Strickland, and their son, Adolph Strickland. In addition, defendant was involved in an ongoing intimate relationship with Carolyn Britt.

On 5 January 1992, defendant and Britt arranged to meet on a dirt road in the Wilcox Road area north of Lumberton. At approximately 5:00 p.m., defendant arrived and backed his Subaru into a wooded area off the road. About ten minutes later, Britt arrived and parked her Pontiac Grand Prix in front of defendant's vehicle. The two got into the front seat of Britt's vehicle and began talking. Defendant had a .38 caliber pistol in his possession. After talking and drinking some beer, defendant and Britt "decided to make love" and at that point moved to the back seat of the vehicle. Defendant laid his pistol on the front seat of the Pontiac.

Defendant testified that approximately two hours had elapsed from the time he and Britt met and when he noticed the overhead light come on in the Pontiac. Defendant saw a man standing at the opened door of the automobile. Defendant described the man as an

Indian approximately thirty years old. Defendant further testified that the man had a pistol in his hand and told defendant "to get out, get out." Defendant exited the Pontiac and began to walk toward his Subaru when he heard two gunshots.

Defendant testified that he returned to Britt's automobile and found her slumped over in the back seat with her face covered in blood but at this point did not know she was dead. There was no sign of the Indian male or the pistol defendant had earlier placed in the front seat. Defendant got into the driver's side of Britt's Pontiac and began driving toward Southeastern General Hospital. The window on the driver's side had been shattered and glass covered the front seat. Defendant testified that while on his way to the hospital he thought he heard Britt from the back seat, so he looked around, and "the next thing [he] knew" the Pontiac "hit something," at which point he became unconscious.

Trooper H.L. Covington testified that when he arrived at the scene he found rescue personnel attending to defendant who was "somewhat trapped" in the front seat of the automobile. Defendant was taken to Southeastern General Hospital. Covington further testified that he found the victim's body in the back seat of the automobile with a bullet hole in her right torso and another behind her right eye. There appeared to be traces of gunpowder around her eye.

Officer Franklin Lovette investigated the case for the Robeson County Sheriff's Department. Lovette testified that as part of the murder investigation he spoke briefly with defendant at the hospital, at which time defendant requested an attorney before making a statement. Lovette also testified that a search of defendant's Subaru revealed a box of .38 caliber ammunition on the front seat. Six bullets were missing from the box.

An autopsy revealed two bullet wounds, one to the head, which penetrated the lower part of the brain and would have caused death almost immediately, and another to the abdomen. In addition, there were two lacerations on the victim's head and abrasions and lacerations on her legs. There were gunpowder marks on the head wound which indicated the pistol was fired from close range.

Eugene Bishop, Special Agent with the State Bureau of Investigation (SBI), testified that he examined the box of ammunition taken from defendant's Subaru, the fired bullet taken from the victim's Pontiac which was determined to have passed through the victim's

abdomen, and the victim's sweater. Bishop concluded that the bullet taken from the victim's vehicle was either fired from a .38 caliber or .357 caliber pistol. He found gunshot residue on the victim's sweater that would indicate the pistol was fired from less than two feet away.

Ernest Roger Peele of the Federal Bureau of Investigation (FBI) testified as an expert witness in the field of bullet lead composition. Peele stated that the bullet taken from the victim's Pontiac was consistent in composition with the bullets from the box of ammunition found in the search of defendant's vehicle.

At trial, the State presented three statements given by defendant on separate occasions through his attorney. In the first statement, made nineteen days after the incident, defendant described the alleged murderer as being about thirty or thirty-two years old, five feet, ten inches tall, and weighing 150 pounds. In his second statement, given about a month later, defendant admitted he "own[ed] guns and had a gun in the car on January 5, 1992." In the third statement, defendant said that his ".38 caliber revolver was on the front passenger seat" in Britt's automobile.

Ruby Dale Chavis, a co-worker of the victim, testified that the victim, in a conversation discussing her relationship with defendant, stated that defendant "was very, very jealous," that she was "tired of his junk," and that "she was thinking about breaking up with him."

Defendant's son, Michael Chavis, testified for the State that he had spoken with his father in the hospital a couple of days after the shooting. When he asked defendant what had happened to the .38 caliber pistol, his father replied that "he had gotten rid of it." Further, when Michael asked his father if he knew who had shot Britt, his father nodded his head yes. Also, when the State asked Michael on direct examination, "While you were at the hospital talking to your father, did he ask you about how tall you were and how much you weighed?", Michael responded "Yes."

**[1]** Defendant first assigns error to the trial court's denial of his motion to dismiss made at the close of all the evidence.

Upon a motion to dismiss in a criminal case,

[a]ll of the evidence, whether competent or incompetent, must be considered in the light most favorable to the state, and the state is entitled to every reasonable inference therefrom. *State v. Witherspoon*, 293 N.C. 321, 237 S.E.2d 822 (1977); *State v. Poole*,

285 N.C. 108, 203 S.E.2d 786 (1974). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *State v. Witherspoon, supra; State v. Bolin,* 281 N.C. 415, 189 S.E.2d 235 (1972). In considering a motion to dismiss, it is the duty of the court to ascertain whether there is substantial evidence of each essential element of the offense charged. *State v. Allred,* 279 N.C. 398, 183 S.E.2d 553 (1971). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Thompson v. Wake County Bd. of Educ.,* 292 N.C. 406, 233 S.E.2d 538 (1977); *Com'r. of Insurance v. Fire Insurance Rating Bureau,* 292 N.C. 70, 231 S.E.2d 882 (1977).

*State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980); *see also State v. McAvoy,* 331 N.C. 583, 589, 417 S.E.2d 489, 493-94 (1992).

Defendant argues in support of his motion to dismiss that the State has not presented evidence sufficient to show that he was the person who committed the homicide. Defendant was charged with murder in the first degree which is defined as the unlawful killing of another human being with malice and with premeditation and deliberation. *McAvoy,* 331 N.C. at 589, 417 S.E.2d at 494. "The test that the trial court must apply is whether there is substantial evidence—either direct, circumstantial, or both—to support a finding that the crime charged has been committed and that defendant was the perpetrator." *State v. Clark,* 325 N.C. 677, 682, 386 S.E.2d 191, 194 (1989).

The evidence taken in the light most favorable to the State shows that defendant and the victim met in a remote area on the evening of 5 January 1992; that defendant had in his possession a .38 caliber pistol and a box of .38 caliber ammunition; that defendant carried the pistol with him into the victim's automobile; and that sometime during the meeting the victim was shot at close range, once in the head and once in the abdomen. An SBI Agent testified that the bullet taken from the automobile which had passed through the victim's abdomen was either a .38 or .357 caliber bullet and that the gunpowder residue found on the victim and her sweater indicated the pistol was fired at close range. Defendant's clothes contained no gunpowder residue, but evidence showed that the clothes had been cleaned prior to being given to law enforcement officers to be examined.

In addition, the State's evidence included three statements given over the course of several months. All of the statements were prepared by defendant's attorney, signed by defendant, and submitted to

investigators. In the first statement, defendant did not mention having a pistol in his possession on the night in question; in the second statement defendant admitted owning guns and having one with him that night but did not specify the caliber. It was not until the final statement that defendant admitted possessing a .38 caliber revolver. Also, in his first statement defendant provided a description of the alleged murderer as being an Indian male approximately thirty years of age, about five feet, ten inches in height, weighing 150 pounds, and wearing what appeared to be a "closed jacket dark in color and darker pants." Defendant did not specify the color of the pants or jacket. At trial, however, defendant's description of the alleged murderer provided that the pants were dark blue and the jacket was light blue. The differences in the statements and the omission of key information—the color of the clothing—when taken in the light most favorable to the State, would permit, but not require, a jury to conclude that defendant tried to hide the existence of his pistol from police and that he had fabricated his description of an alleged murderer.

Further, the testimony of State's witness Ruby Chavis would permit, but not require, a jury to conclude that defendant and the victim were having serious problems in their relationship. Also, defendant's son, Michael Chavis, testified that when he asked his father what had happened to his .38 caliber pistol, defendant responded that "he had gotten rid of it." When Michael asked defendant if he knew who shot the victim, he nodded his head yes. Additionally, Michael responded affirmatively to the prosecutor's question: "While you were at the hospital talking to your father, did he ask you about how tall you were and how much you weighed?" This evidence would permit a jury to conclude that defendant had disposed of the murder weapon and was trying to determine his son's height and weight in order to provide the police with a description of someone else as the murderer.

Viewing all of the evidence in the light most favorable to the State, we conclude that there is substantial evidence which would permit a reasonable jury to find that defendant was the perpetrator of the homicide. Therefore, the trial court did not err in denying defendant's motion to dismiss.

[2] In his second assignment of error, defendant contends that the trial court erred in denying his request to give the following instruction:

The defendant in this case did not give a statement directly to a law enforcement officer, did not submit to a polygraph exami-

nation, and did not submit to an examination under hypnosis. The law in North Carolina gives him this privilege. The same law also assures him that his decision not to do so creates no presumption against him. Therefore, such evidence, if any, is not to influence your decision in any way.

Defendant contends that the refusal to give the requested jury instruction constitutes prejudicial error.

The law clearly provides that where "a specifically requested jury instruction is proper and supported by the evidence, the trial court must give the instruction, at least in substance." *State v. Ford*, 314 N.C. 498, 506, 334 S.E.2d 765, 770 (1985). "The purposes of the trial judge's charge to the jury are to clarify the issues, eliminate extraneous matters and declare and explain the law arising on the evidence." *State v. Cousins*, 292 N.C. 461, 464, 233 S.E.2d 554, 556 (1977).

Defendant admits finding no authority dealing directly with his tendered instruction but contends that "the factual and evidentiary matters in the present case presented an unusual situation" requiring special instructions. Defendant specifically argues that the tendered instruction was necessary because of the State's repeated references to defendant's exercise of his right to counsel and his refusal to submit to a polygraph test or to undergo hypnosis. After a thorough review of the trial transcript, including those excerpts cited by defendant, we conclude that most of the alleged improper references do not constitute evidence supporting the tendered instruction. We first note that many of the excerpts cited by defendant do not contain any mention of defendant's assertion of his right to counsel or his refusal to submit to a polygraph test or to undergo hypnosis. Secondly, a number of the references were objected to by defendant and his objections were sustained. Further, at one point, the jury was instructed, at defendant's request, to disregard the State's line of questioning. "When such proper instructions are given when the evidence is admitted, the judge is not required to repeat these instructions in the charge." *State v. Crews*, 284 N.C. 427, 440, 201 S.E.2d 840, 849 (1973).

Additional references which were not objected to by defendant occurred during questioning regarding three statements from defendant submitted to investigators by his attorney. The questioning by the State concerned the manner in which the statements were given to investigators and the inconsistencies and omissions among the statements. The manner in which defendant prepared these statements

and their content had independent significance apart from the fact that they necessarily revealed defendant's use of an attorney in dealing with the investigators. Nonetheless, a cautionary instruction would not have been improper in light of the fact that the State's questioning did include references to defendant's assertion of his right to counsel.

Assuming *arguendo*, that the trial court erred by not submitting the tendered instruction, we conclude that defendant was not prejudiced by the error. First, a number of the allegedly improper references occurred during defendant's own cross-examination testimony where, responding to questions from the State that did not involve defendant's right to counsel, defendant voluntarily made reference to his use of an attorney. Secondly, by repeatedly sustaining defendant's objections to the State's references and, on one occasion instructing the jury to disregard the State's line of questioning, the trial judge conveyed to the jury that evidence of defendant's assertion of his right to counsel and his refusal to submit to a polygraph test or to undergo hypnosis was not to affect its decision. We are convinced that failure to give the proffered instruction was not prejudicial error. N.C.G.S. § 15A-1443(a) (1988).

[3] In his third assignment of error, defendant argues that the trial judge erred when he granted the State's motion to sequester defense witnesses and then ultimately sequestered all of the witnesses with the exception of the State's lead officer, Detective Lovette. Under N.C.G.S. § 15A-1225 and N.C.G.S. § 8C-1, Rule 615, a trial judge may, upon a motion of a party or upon his own motion, order witnesses sequestered. This rule does not authorize exclusion of "a person whose presence is shown by a party to be essential to the presentation of his cause," or "a person whose presence is determined by the court to be in the interest of justice." N.C.G.S. § 8C-1, Rule 615(3), (4) (1992). Further,

> [a] trial court has discretion in a criminal case to sequester witnesses. N.C.G.S. § 15A-1226 (1988). *See also State v. Stanley*, 310 N.C. 353, 357, 312 S.E.2d 482, 485 (1984). A ruling within the trial court's discretion should be reversed only upon a showing that the ruling could not have been the result of a reasoned decision. *Stanley*, 310 N.C. at 357, 312 S.E.2d at 485.

*State v. Gay*, 334 N.C. 467, 487-88, 434 S.E.2d 840, 851 (1993).

Here the State requested that defendant's witnesses be sequestered. Defendant's position was that no sequestration was needed but, if ordered, should be universal to include both witnesses for the defense and the State. The State did not object to universal sequestration but requested an exception for its lead officer under Rule 615(3), asserting that Officer Lovette's presence was essential to the presentation of the State's case. Defendant argued that no exception was needed and allowing Officer Lovette to remain while all other witnesses were sequestered "implies the Court's approval of the witness' veracity." The trial court, believing that Officer Lovette's presence was essential to the presentation of the State's case, ordered the sequestering of all witnesses with the exception of Officer Lovette.

Defendant now argues that allowing Officer Lovette to remain in the courtroom when all other witnesses were sequestered "constituted an endorsement of this officer's veracity" at a critical point in the trial and thus amounted to an abuse of discretion. In support of his contention that the trial court abused its discretion, defendant argues that, on direct examination by the State, Officer Lovette testified that defendant's clothes had been given to him "washed and cleaned." However, when defendant recalled Officer Lovette as an adverse defense witness, Lovette testified that he did not say the clothes had been "washed" but that they had been "cleaned." Defendant alleges Officer Lovette contradicted himself in his testimony, therefore his veracity would have been suspect before the jury.

We fail to grasp a significant distinction between the terms "washed and cleaned" and "cleaned" in the context of this case and defendant does not suggest one. In any event, this change in the officer's testimony is not sufficient evidence of prejudice to justify reversing a trial court's discretionary ruling allowing an officer to remain in the courtroom as a person essential to the presentation of the State's case. *See* N.C.G.S. § 8C-1, Rule 615(3).

[4] In his fourth assignment of error, defendant argues that the trial court erred by allowing Ruby Chavis to testify to statements made by the victim because such statements were not relevant to any issue before the court. Chavis testified that shortly before the victim's death the victim told her that defendant was "very, very jealous," that "she was thinking about breaking up with him," and that "she was tired of his junk." Defendant concedes that this testimony, if relevant, would ordinarily be admissible, either as nonhearsay, because it is

not offered into evidence to prove the truth of the matter asserted, or under the state of mind exception to the hearsay rule. *See* N.C.G.S. § 8C-1, Rules 801(c), 803(3) (1992). Defendant argues here the testimony is irrelevant and should have been excluded because he was not aware that the statements had been made.

Under Rule 401 of the North Carolina Rules of Evidence, " '[r]elevant evidence' means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Further, under Rule 402, all relevant evidence is admissible. N.C.G.S. § 8C-1, Rule 402 (1992).

We have held that "evidence tending to show the state of mind of the victim is admissible as long as the declarant's state of mind is relevant to the case." *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990) (victim's statements made three weeks before her disappearance about her husband's threats were admitted because the victim's state of mind was relevant to the issue of her relationship with her husband); *see also State v. McHone*, 334 N.C. 627, 435 S.E.2d 296 (1993) (victim's conversations with three witnesses related directly to the victim's fear of defendant and were admissible to show the victim's state of mind at the time the conversations took place), *cert. denied,* —— U.S. ——, 128 L. E. 2d 220 (1994); *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991) (victim's recorded statements were relevant because they tended to disprove the normal loving relationship that defendant contended existed between the two). Also, "any evidence offered to shed light upon the crime should be admitted by the trial court." *State v. Meekins*, 326 N.C. 689, 696, 392 S.E.2d 346, 349 (1990).

In this case, the victim's statements that defendant "was very, very jealous," that "she was thinking about breaking up with him," and that "she was tired of his junk," were evidence of her state of mind regarding her relationship with defendant. These statements rebutted defendant's testimony on cross-examination that the victim "seemed to be perfectly happy with the relationship." We hold that the victim's state of mind regarding the nature of her relationship with defendant was relevant in this case to show that, contrary to testimony by defendant, the victim and defendant were having problems in their relationship. This is true, notwithstanding that defendant may not have known the statements were made. Therefore, the trial court did not err in admitting the testimony.

**[5]** In his fifth assignment of error, defendant argues that the trial court improperly allowed testimony of Ernest Roger Peele as an expert in the field of bullet lead composition. Rule 702 of the North Carolina Rules of Evidence provides for expert testimony and states that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C.G.S. § 8C-1, Rule 702 (1992).

Defendant argues that Peele was not qualified to testify as an expert witness in this case. However,

> [i]t is not necessary that an expert be experienced with the identical subject in a particular case or that the expert be a specialist, licensed, or even engaged in a specific profession. Furthermore, the trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony.

*State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984) (citations omitted). The trial court's finding that a witness is qualified as an expert will not be reversed unless there is no evidence to support it. *Id.*

The State presented evidence that Peele received a Bachelor of Science Degree in Physics from The University of North Carolina and had worked in the Elemental and Metals Analysis Unit of the FBI Laboratory for over thirteen years. Peele testified that he received a Master's Degree in Public Administration from Virginia Commonwealth University and that during the last twelve years most of his time at the FBI Laboratory had been spent examining bullets and determining the composition of bullets or pieces of lead. We conclude that there was evidence to support the trial court's finding that Peele was qualified to testify as an expert in the field of bullet lead composition. Therefore, the trial court did not abuse its discretion and this assignment of error is rejected.

**[6]** Finally, defendant argues that the trial court committed reversible error in sustaining the State's objections to defendant's proffered evidence of the circumstances surrounding the sale of a farm owned by the victim's family after her death. Defendant presented testimony

STATE v. JONES

[337 N.C. 198 (1994)]

that the victim had purchased life insurance to take care of her parents and was considering making her brother a beneficiary. There was also evidence that her family's farm was to be sold around the time of her death. Defendant made an offer of proof that: (1) his witness Lloyd Meekins would have testified that he was contracted to sell the farm and the sale was held on 4 January 1992, but the day after the murder the sale was cancelled; and (2) his witness Hobert Britt would have testified that he was the last and highest bidder at the sale and that his deposit was refunded to him. Defendant argues that this scenario shows motive of a possible third party in the homicide of Britt.

When evidence is tendered for the purpose of showing that someone other than defendant was the perpetrator of the offense in question, the evidence is relevant and admissible if it does more than create an inference or conjecture that defendant was not the perpetrator. *See, e.g., State v. McElrath,* 322 N.C. 1, 14, 360 S.E.2d 442, 449 (1988) (map relevant and admissible because it "casts doubt upon the State's evidence that defendant was the killer and suggests instead an alternative scenario for the victim's ultimate demise"); *State v. Cotton,* 318 N.C. 663, 667, 351 S.E.2d 277, 279-80 (1987) (evidence that a person with similar features committed charged offense and two other offenses in similar manner is relevant as tending to implicate the other party and be inconsistent with defendant's silence). Nevertheless, it is well established that in order to be both relevant and admissible such evidence must point directly to the guilt of some specific other person or persons. *State v. Brewer,* 325 N.C. 550, 561, 386 S.E.2d 569, 575, *cert. denied,* 495 U.S. 951, 109 L. Ed. 2d 541 (1990). In the instant case, the tendered evidence does not point directly or indirectly to the guilt of any other specific person or persons for the homicide. The proffered evidence creates, at most, conjecture that defendant was not the perpetrator. Therefore, the trial court did not err in sustaining the State's objection to the admission of this evidence.

In defendant's trial we find no error.

NO ERROR.