STATE OF NORTH CAROLINA v. EUGENE TYRONE DeCASTRO

No. 221A93

(Filed 8 March 1996)

## 1. Evidence and Witnesses § 1473 (NCI4th)— first-degree murder—knife—discovered three months after crime—some distance from scene

The trial court did not err in a first-degree murder prosecution by admitting into evidence a kitchen knife found approximately three months after the murders and some distance from the crime scene along the path of flight which officers were able to follow from the scene of the crime to the spot where defendant was found. Water in the pond where the knife was found had receded since the murders, and the medical examiner found the wounds on both victims consistent with the length and width of the knife. The lapse of time and the distance from the crime scene merely go to the weight of the evidence.

**Am Jur 2d, Evidence §§ 1464, 1467.**

## 2. Criminal Law § 461 (NCI4th)— first-degree murder—prosecutor's argument—presence of State's witness at scene—physical evidence distinguished from testimonial

The trial court did not err in a first-degree murder prosecution by overruling defendant's objection to the prosecutor's argument that no physical evidence connected the State's key witness to the scene. Although defendant contended that the prosecutor travelled outside the evidence, the prosecutor's argument was supported by the evidence and the prosecutor was clearly attempting to distinguish the physical evidence from the testimonial evidence, which does not appear to be inappropriate considering the large amount of physical evidence admitted.

**Am Jur 2d, Trial §§ 609, 632.**

## 3. Evidence and Witnesses § 1240 (NCI4th)— defendant's statement—made during booking into jail

The trial court did not err in a first-degree murder prosecution by admitting a defendant's statement that some of the money he had was his where the statement was not the result of an interrogation but in response to a question from a detective to an SBI agent and in the general course of turning over defendant's cloth-

STATE v. DeCASTRO

[342 N.C. 667 (1996)]

ing and property in exchange for an inmate jumpsuit. The exchange between the officers did not constitute an initiation of questioning or badgering of defendant with words or actions reasonably likely to elicit an incriminating response from defendant.

**Am Jur 2d, Criminal Law § 788; Evidence §§ 719, 749.**

**4. Evidence and Witnesses § 173 (NCI4th)— first-degree murder—witness's fear of defendant**

The trial court did not err in a capital first-degree murder prosecution by admitting testimony that the witness was afraid of defendant. This testimony did not constitute inadmissible character evidence under N.C.G.S. § 8C-1, Rule 404(a), because it was essentially *res gestae* in that it explained why the witness was found walking away from the crime scene and provided evidence confirming the state of mind, method of operation, and course of conduct of defendant and his cohorts.

**Am Jur 2d, Evidence § 556.**

**5. Criminal Law § 1325 (NCI4th)— capital sentencing— Issues Three and Four—instructions**

There was no plain error in a capital sentencing hearing by instructing the jury that it must be unanimous in its answers to Issue Three and Issue Four on the Issues and Recommendation as to Punishment form where defendant and the State agree that the wording on the form and the original instructions were correct; after beginning deliberations, the jury sent the court a question which read, "I put down an answer we did not unanimously agree on. Do we need another copy for the record?"; the court instructed the jury that it could mark through a previous answer and record the correct answer, and that the jury must be unanimous as to issues one, three, and four; and the jury then changed a "no" to a "yes" on Issue Three. Although defendant argues that the supplemental instruction was in conflict with the initial instruction, the jury's question demonstrates that the jury understood that its answer to Issue Three must be unanimous.

**Am Jur 2d, Trial §§ 1441, 1444.**

**6. Criminal Law § 1361 (NCI4th)— capital sentencing—mitigating circumstances—impaired capacity**

The trial court did not err in a capital sentencing hearing by not submitting the statutory mitigating circumstance that defend-

ant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired based on alcohol consumption where defendant requested only the nonstatutory mitigating circumstance that defendant was under the influence of alcohol. The only evidence of intoxication was testimony that defendant was "acting crazy," that defendant and another were driving wildly, that the group had purchased and drunk a bottle of wine, and that an almost empty wine bottle bearing defendant's fingerprint was found at the scene. Nothing in the record suggests how much alcohol defendant consumed and no expert testimony or other evidence was introduced to show that defendant's capacity to appreciate the criminality of his conduct was impaired. The mere consumption of alcohol is not enough to warrant submission of the N.C.G.S. § 15A-2000(f)(6) circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.**

7. **Criminal Law § 1363 (NCI4th)— capital sentencing— catchall mitigating circumstance—supplemental instructions**

The trial court did not err in a capital sentencing hearing in the supplemental instruction given in response to the jury question "Was 13 based on proven evidence or anything that we feel like could arise from the evidence that have [sic] mitigating value?" where 13 was the catchall mitigating circumstance. Viewed in the context of the language of the catchall, the court's answer was proper and in no way contradicted the earlier instruction that the jurors could take into consideration anything they had observed in the courtroom which they deemed to have mitigating value. Defendant's contention that the supplemental instruction prohibited the jury from considering demeanor evidence as it relates to remorse is without merit since the question specifically pertained to number 13, while 12 related to remorse, which no juror found. Finally, at least one juror found the catchall mitigating circumstance as to both murders.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 514, 552-555.**

**Modern status of the rules as to voluntary intoxication as defense to criminal charge. 73 ALR3d 195.**

**8. Criminal Law § 1322 (NCI4th)— capital sentencing—possibility of parole**

The trial court did not err in a capital sentencing hearing by answering a jury question as to whether life meant life in prison without the possibility of parole with the pattern jury instruction. The amendment to N.C.G.S. § 15A-2002 which became effective 1 October 1994 applies prospectively and has no applicability in this case.

**Am Jur 2d, Trial §§ 286, 1443.**

**Procedure to be followed where jury requests information as to possibility of pardon or parole from sentence imposed. 35 ALR2d 769.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**9. Criminal Law § 1362 (NCI4th)— capital sentencing—mitigating circumstances—age of defendant**

There was no prejudicial error in a capital sentencing hearing where defendant contended that the court erred by instructing the jury that it could determine whether defendant's age had mitigating value but did not submit the statutory circumstance. Defendant relies on his chronological age of 28 and the testimony of his mother, which did not show any special or unusual circumstances suggesting that defendant possessed the limited intellectual or emotional maturity necessary to require submission of the age mitigating circumstance. Although defendant dropped out of high school, he had normal intelligence and academic success. An error in allowing the jury to consider whether defendant's chronological age alone had mitigating value was beneficial to defendant.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.**

**10. Criminal Law § 1348 (NCI4th)— capital sentencing—mitigation—instructions**

The trial court did not err in a capital sentencing hearing in its instruction on the concept of mitigation. Although defendant contended that the instruction focused on the killing rather than on defendant as an individual, the instruction was virtually identical to the pattern jury instructions.

Am Jur 2d, Criminal Law § 598.

**11. Criminal Law § 1320 (NCI4th)— capital sentencing— aggravating circumstances—especially heinous and course of conduct—different evidence**

The trial court did not err in a sentencing hearing for two first-degree murders by allowing the jury to find and consider as to the killing of one victim that the killing was especially heinous, atrocious, or cruel and that the killing occurred during a course of conduct which included the commission by defendant of other crimes of violence against another person or persons. Although defendant contended that the two circumstances were based on the same evidence in that the especially heinous circumstance centered around the victim witnessing the murder of her husband as she too was beaten, stabbed, and killed, the evidence supporting these aggravating circumstances is entirely different.

Am Jur 2d, Trial §§ 1441, 1444.

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.

**12. Criminal Law § 1343 (NCI4th)— capital sentencing—aggravating circumstances—especially heinous—instruction— not unconstitutional**

The instruction on the especially heinous, atrocious, or cruel aggravating circumstance in a capital sentencing hearing was not constitutionally flawed.

Am Jur 2d, Criminal Law § 598; Trial § 1441.

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.

**13. Criminal Law § 1337 (NCI4th)— capital sentencing—aggravating circumstances—previous conviction involving violence—disjunctive instruction**

There was no error in a capital sentencing hearing in an instruction on the aggravating circumstance of previous conviction of a crime involving the use or threat of violence to another person where the court instructed the jury to find this circum-

stance if it found that defendant had been convicted of common law robbery or voluntary manslaughter involving the use or threat of violence. So long as the crimes for which defendant had been previously convicted were felonies and involved the use or threatened use of violence against another person, the specific crime which supports the aggravating circumstance is immaterial. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**14. Criminal Law § 1326 (NCI4th)— capital sentencing—mitigating circumstances—instructions—burden of proof—satisfaction of jury**

There was no error in a capital sentencing hearing where the trial court instructed the jury that defendant must "satisfy" the jury that a mitigating circumstance exists. Defendant specifically requested the instruction, and "satisfies" has been held in *State v. Payne*, 337 N.C. 505, to denote a burden of proof consistent with a preponderance of the evidence.

**Am Jur 2d, Trial §§ 1441, 1444.**

**15. Criminal Law § 1325 (NCI4th)— capital sentencing—mitigating circumstances—instructions—unanimity**

There was no plain error in a capital sentencing hearing where the jurors were instructed regarding Issue Two that only one or more of the jurors was required to find that the mitigating circumstance existed and that it had mitigating value, and regarding Issue Three that they must weigh the aggravating circumstances against the mitigating circumstances if *the jury* found from the evidence one or more mitigating circumstances. It is impossible to discern whether the trial court had a *lapsus linguae* or whether the transcript contains an error. The instruction did not preclude any juror from considering in Issue Three mitigating evidence that juror had found in Issue Two. Defendant did not object to this instruction; even assuming that the instruction

was error, defendant has not met the heavy burden of demonstrating that the error was so fundamental and grave that a different result was likely to have occurred had the error not been committed.

**Am Jur 2d, Trial §§ 1441, 1444.**

**16. Criminal Law § 1325 (NCI4th)— capital sentencing—mitigating circumstance—unanimity**

The trial court did not err in a capital sentencing hearing by not instructing that the jury as a whole could consider any mitigating circumstance found by any one juror at Issue Four. The court gave the pattern jury instruction and the issue was resolved contrary to defendant's position in *State v. Lee*, 335 N.C. 244.

**Am Jur 2d, Trial § 1441.**

**17. Criminal Law § 1363 (NCI4th)— capital sentencing—instructions—nonstatutory mitigating circumstances**

The trial court did not err in a capital sentencing hearing by instructing the jury as to nonstatutory mitigating circumstances that it must first determine the existence of the circumstance and then whether it had mitigating value.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.**

**18. Jury § 262 (NCI4th)— peremptory challenges—jurors ambivalent about death penalty**

The State in a first-degree murder prosecution did not improperly use peremptory challenges to remove jurors who expressed hesitancy or reservations about the death penalty.

**Am Jur 2d, Jury §§ 234, 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**19. Jury § 235 (NCI4th)— death qualification of jury—no error**

The trial court did not err in a first-degree murder prosecution by allowing the death qualification of the jury.

**Am Jur 2d, Jury § 279.**

Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

20. **Criminal Law § 1327 (NCI4th)— capital sentencing— instructions—duty to recommend death**

There is no error in the pattern jury instruction imposing a duty upon the jury to return a recommendation of death if it finds that the mitigating circumstances were insufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to call for the death penalty

Am Jur 2d, Trial §§ 1441, 1444.

Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.

21. **Homicide § 175 (NCI4th)— knife—dangerous weapon as a matter of law**

There was no error in a first-degree murder prosecution in instructing the jury that a knife is a dangerous weapon as a matter of law.

Am Jur 2d, Homicide § 5.

22. **Constitutional Law § 371 (NCI4th)— death penalty— constitutional**

The North Carolina death penalty is not unconstitutional.

Am Jur 2d, Criminal Law § 628; Homicide § 556.

Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.

Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.

23. **Criminal Law § 1340 (NCI4th)— capital sentencing—aggravating circumstances—murder committed in commission of robbery—felony murder and premeditation and deliberation**

There was no error in a capital sentencing hearing for two murders where the trial court submitted an aggravating circum-

stance that the murder of one victim was committed while defendant was engaged in the commission of a robbery. Defendant argues that the instructions on the aggravating circumstance did not differentiate between applying the aggravating circumstance to murder based upon premeditation and deliberation and murder based upon felony murder. The merger rule has been consistently held inapplicable where defendant is found guilty under theories of both premeditation and deliberation and felony murder; the instruction required by defendant's argument would be unworkable.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 552-555.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-_Gregg_ cases. 66 ALR4th 417.**

24. **Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

The evidence supported the aggravating circumstances found in a capital sentencing hearing, the sentences of death were not imposed under the influence of passion, prejudice, or any other arbitrary factor, and the death sentences were not excessive or disproportionate. None of the seven cases in which the death sentence was found to be disproportionate involved a double murder and this case has the characteristics of first-degree murder cases for which the death penalty has been upheld as proportionate.

**Am Jur 2d, Criminal Law § 628; Homicide § 556.**

Justices LAKE and ORR did not participate in the consideration or decision of this case.

Justice FRYE concurring in part and dissenting in part.

Justice WHICHARD joins in this concurring and dissenting opinion.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from two judgments imposing sentences of death entered by Stephens (Donald W.), J., at the 12 April 1993 Criminal Session of Superior Court, Johnston

**STATE v. DeCASTRO**

[342 N.C. 667 (1996)]

County. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for robbery with a dangerous weapon was allowed on 15 March 1994. Heard in the Supreme Court 12 October 1994.

*Michael F. Easley, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant Eugene Tyrone DeCastro was tried capitally on indictments charging him with the murders of Leon and Margaret Batten and the robbery with a dangerous weapon of Leon Batten. The jury returned verdicts finding defendant guilty of two counts of first-degree murder and one count of robbery with a dangerous weapon. After a sentencing hearing conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of death for each murder conviction. The trial court imposed the death sentences as recommended and imposed an additional consecutive sentence of forty years' imprisonment for the robbery conviction.

Defendant appeals to this Court, asserting twenty-four assignments of error. For the reasons discussed herein, we conclude defendant's trial and capital sentencing proceeding were free from prejudicial error and the death sentences were not disproportionate. Accordingly, we uphold defendant's convictions and sentences on two counts of first-degree murder and his conviction and sentence for robbery with a dangerous weapon.

The evidence introduced at the guilt phase, when viewed in the light most favorable to the State, showed the following: At approximately 5:20 p.m. on 29 February 1992, defendant, George Goode, his brother Chris Goode, and Glenn Troublefield went for a ride together in George Goode's automobile. In Smithfield they saw a man walking along the road, and George stopped the vehicle. Defendant, George, and Chris got out of the vehicle and assaulted and robbed the man. The three men then returned to the vehicle, and George drove away at a high speed. At this point Troublefield requested that he be taken home, but George refused.

**STATE v. DeCASTRO**

[342 N.C. 667 (1996)]

George began playing "chicken" with other vehicles and eventually lost control of his vehicle and ran into a ditch. After freeing the vehicle, defendant, George, and Chris went to a store and bought a bottle of wine. Troublefield again asked to be taken home. George's reckless driving continued until he lost control of the vehicle again, stranding it in a ditch near the Dallas Mobile Home Park. After unsuccessfully attempting to remove the vehicle from the ditch, defendant, George, and Chris began walking toward the Dallas Mobile Home Park, where George and his wife rented a mobile home. Troublefield left the area. About 6:35 p.m. a friend of George Goode's wife saw George and several other men at the Goodes' mobile home.

Earlier that day the owner of the Dallas Mobile Home Park, Leon Batten, had informed one of the Goodes' neighbors that the Goodes' mobile home was vacant and that he was seeking new tenants. Apparently, the Goodes had been delinquent in paying their rent. Between 6:30 and 7:30 p.m. this neighbor saw a strange man in the mobile home and went to inform Leon. Leon drove his truck to the Goodes' mobile home. A few minutes later witnesses saw several black men standing over Leon in the Goodes' yard, beating him. Some witnesses recalled seeing four men beating Leon, while others recalled seeing only three. A park resident drove to the Batten residence and informed Leon's wife, Margaret, of the skirmish at the park, and Mrs. Batten drove to the Goodes' mobile home. Other witnesses drove to the nearby home of a sheriff's deputy and informed him of the trouble.

At approximately 7:30 p.m. a sheriff's deputy arrived at the Goodes' mobile home and saw three black males standing in the yard. At trial the deputy positively identified two of the men as defendant and George Goode. The men fled, and the deputy was unable to catch them. The deputy then discovered the bodies of Leon and Margaret Batten in the cargo bed of Leon's truck. Multiple stab wounds were apparent on both victims, and neither victim had any vital signs.

Another deputy sheriff approaching the crime scene spotted George Goode two-tenths of a mile from the mobile home park, walking quickly away from the area. When taken into custody George was in possession of Leon's wallet. Within an hour after George was taken into custody, his brother Chris Goode approached the crime scene asking for George. After noticing bloodstains on Chris' clothes, officers placed him in custody and discovered Leon Batten's partial den-

tal plate in his pocket. Glenn Troublefield was picked up by a sheriff's deputy as he walked down the road.

Investigators continued their search for a fourth suspect. At approximately 6:00 a.m. the next morning, investigators, with the aid of a State Bureau of Investigation (SBI) airplane equipped with an infrared tracking device, spotted defendant walking along a dirt road in the area. Officials found defendant lying at the base of a tree, and he was then arrested.

Investigators later found three sets of human tracks leading from an area near the Goodes' mobile home, which they were able to follow despite several gaps of up to two hundred yards. The tracks diverged, and one set of tracks ended approximately fifty yards from where defendant was arrested.

A wine bottle was found in the passenger compartment of Leon's truck. Defendant's fingerprints matched one of two fingerprint lifts taken from the wine bottle. The inside portion of the truck tailgate was smeared with a blood-like substance and had a handprint impressed in it. The handprint matched defendant's. In addition, blood taken from the camouflage jacket defendant was wearing when he was arrested was consistent with Leon's blood.

An SBI agent and a sheriff's detective testified regarding a statement made by defendant while they were collecting defendant's clothing at the jail. The officers took defendant's clothing and told defendant to remove everything from his pockets and to place the items on a nearby bench. Defendant removed $13.00 from his pockets. After defendant had completely disrobed and the officers had collected all of his clothing, the detective asked the agent "if it was okay for [defendant] to keep the money." The agent then turned back toward defendant and saw some money in defendant's top pocket. Before the agent could say anything, defendant said, "I had some of my own money, too, now."

The medical examiner who conducted the autopsies on both victims described the eight knife wounds to Margaret Batten's head and neck and the fifteen stab wounds to her chest and abdomen as well as the numerous defensive wounds on the back of her hands. In addition to the external cuts, the autopsy revealed a variety of internal injuries, including six to seven broken ribs and cuts through the heart, lungs, esophagus, stomach, large intestine, spleen, kidney, and liver. Margaret died from the multiple stab wounds to her chest and

abdomen. The medical examiner testified that Margaret did not die a quick and painless death because the wounds she suffered were not severe enough to be instantly fatal and that Margaret probably remained conscious during the five to ten minutes it took for her to die.

Regarding the autopsy of Leon Batten, the medical examiner testified that she observed several stab and puncture wounds on his body. The evidence also showed blunt trauma to the head and face, which could have resulted from traumatic blows with a human fist or kicking-type blows with a foot. Leon's head and face were covered with abrasions, contusions, lacerations, bruises, and scrapes. In addition, Leon sustained several internal injuries, including broken ribs and puncture wounds of the chest. Leon also suffered damage to his hyoid bone, a horseshoe-shaped bone in the very uppermost part of the neck below the chin, which could have been caused by a severe blow to the neck with a human fist, a hard kick in the neck, or manual strangulation. Leon died as a result of a stab wound to the heart.

Defendant did not testify or offer any evidence during the guilt phase of the trial.

During the sentencing proceeding at defendant's trial, the State offered testimony from the medical examiner regarding the painful nature of the victims' deaths. The State also introduced evidence that in 1982, when defendant was seventeen years old, he was convicted of voluntary manslaughter and common law robbery. Defendant received a six-year sentence for these offenses.

Defendant offered the testimony of several witnesses during the sentencing proceeding. A police detective testified regarding the circumstances surrounding defendant's 1982 conviction for voluntary manslaughter. The detective testified that defendant had been at a birthday party when one of his friends got into a fight. Defendant handed his friend a knife, and the friend stabbed the other person and ran. Defendant did not stab anyone and was very cooperative during the investigation of the crime.

Prison and jail officials testified that defendant was well behaved and cooperative while awaiting trial in this case. Defendant appeared to have adjusted to prison life in a satisfactory fashion.

Defendant's mother and aunt testified regarding his childhood and family life. When defendant was young, his mother and father separated; and defendant had no significant contact with his father

for several years. His parents eventually reconciled; and in 1981 when defendant was about fifteen years old, they moved from New York to North Carolina. Defendant had an especially good relationship with his aunt. He had also been regularly employed at the time of this incident.

At the close of the sentencing proceeding, defendant addressed the jury personally. Defendant explained that he was very sorry about the Battens' deaths.

## GUILT PHASE

[1] In his first assignment of error, defendant contends that the trial court committed reversible error in overruling his objections to the admission of a kitchen knife found approximately three months after the murders and some distance away from the crime scene. Defendant contends that because the State failed to associate the knife with defendant, it bore absolutely no relevance to whether he committed the offense and should have been excluded. We disagree.

Defendant relies primarily on cases analyzing the sufficiency of the evidence to withstand a motion to dismiss in arguing that the evidence linking the kitchen knife to defendant and the murders is too speculative or tenuous. *See, e.g., State v. Scott*, 296 N.C. 519, 251 S.E.2d 414 (1979); *State v. White*, 293 N.C. 91, 235 S.E.2d 55 (1977); *State v. Allred*, 279 N.C. 398, 183 S.E.2d 553 (1971); *State v. Davis*, 74 N.C. App. 208, 328 S.E.2d 11, *disc. rev. denied*, 313 N.C. 510, 329 S.E.2d 406 (1985); *State v. Bell*, 65 N.C. App. 234, 309 S.E.2d 464 (1983), *aff'd*, 311 N.C. 299, 316 S.E.2d 72 (1984); *State v. Lee*, 34 N.C. App. 106, 237 S.E.2d 315 (1977), *aff'd*, 294 N.C. 299, 240 S.E.2d 449 (1978). These decisions analyze on a case-by-case basis the sufficiency of the evidence to take the case to the jury on the identity of the defendant as the perpetrator of the charged offenses. These cases do not control the evidentiary question presented in this case: the relevancy and admissibility of the kitchen knife as one of the possible murder weapons in the prosecution of the charges against defendant.

The law of the admissibility of a possible murder weapon is well established, and the general principles were recently stated in *State v. Felton*, 330 N.C. 619, 638, 412 S.E.2d 344, 356 (1992):

Under our rules of evidence, unless otherwise provided, all relevant evidence is admissible. N.C.G.S. § 8C-1, Rule 402 (1988).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988). In criminal cases, " '[E]very circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury.' " *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989) (quoting *State v. Hamilton*, 264 N.C. 277, 286-87, 141 S.E.2d 506, 513 (1965), *cert. denied*, 384 U.S. 1020, 16 L. Ed. 2d 1044 (1966)).

In *Felton* we held that four bullets found in a water heater behind the defendant's house and which were the same caliber and had rifling characteristics matching the fatal bullet were properly admitted as circumstantial evidence linking the defendant to the murder. *Felton*, 330 N.C. at 638, 412 S.E.2d at 356. The fact that bullets of this manufacture and rifling were commonly available and the State's expert could not conclude that the bullets were actually fired from the same gun as the fatal bullet impacted the weight of the evidence, not its admissibility. *Id.*; *see also State v. King*, 287 N.C. 645, 660, 215 S.E.2d 540, 549 (1975) (admission of hammer "similar to" one with which the victim was hit was proper, even though it was found some time later and some distance away from scene of crime), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1209 (1976); *State v. Minton*, 234 N.C. 716, 723, 68 S.E.2d 844, 849 (1952) (while testimony did not directly show that the pistol was the murder weapon, admission of the evidence was proper since the pistol was the same caliber as the fatal bullet and "might well have been the weapon").

The knife in question was found on 5 June 1992 by a boy while fishing in a pond some distance away from the crime scene. The knife was found along the path of flight which officers were able to follow roughly from the scene of the crime to the spot where defendant was located after the murders. The fact that the knife was found about three months after the murders could be explained by the changing water levels of the pond. At the time of the murders, the water level of the pond was high, but the water had receded at the time the knife was found. Furthermore, while the knife had no bloodstains and was not tested for fingerprints, the medical examiner who conducted the victims' autopsies expressed the opinion that some of the fatal knife wounds found on both victims were consistent with the length and width of the knife and that the knife could have been one of the murder weapons.

Accordingly, we conclude that the trial court did not err in denying defendant's motion to exclude the knife and in allowing the prosecution to present it to the jury. Defendant's arguments regarding the lapse of time in finding the knife and its distance from the crime scene merely go to the weight or probative value of the evidence. These matters were fully argued to the jury by defendant. Defendant's first assignment of error is rejected.

**[2]** In his second assignment of error, defendant contends that the trial court committed reversible error in overruling his objection to "a grossly improper argument referring to matters beyond the scope of the evidence." More specifically, defendant contends that the prosecutor's argument that "no physical evidence" connected the State's key witness, Glenn Troublefield, to the commission of the crimes was beyond the scope of the evidence and deprived him of a fair trial. We disagree.

By statute in this jurisdiction, counsel cannot argue matters beyond the scope of the established evidence. N.C.G.S. § 15A-1230 (1988). Under this provision, "[d]uring a closing argument to the jury an attorney may not . . . make arguments on the basis of matters outside the record." *Id.* However, while it is error for a prosecutor to argue as evidence matters not established at trial, *see State v. Tuten*, 131 N.C. 701, 42 S.E. 443 (1902), in hotly contested cases, prosecutors are given wide latitude in arguments to the jury and are permitted to argue the evidence which has been presented as well as all reasonable inferences which may be logically drawn from the evidence, *see State v. Shank*, 327 N.C. 405, 394 S.E.2d 811 (1990).

Defendant contends that the prosecutor traveled outside the record when he argued there was no physical evidence of any sort that connected Troublefield to the crimes; however, this statement by the prosecutor was supported by the evidence presented at trial. There was no fingerprint evidence linking Troublefield to the crime scene, no property belonging to the victims found in Troublefield's possession, and no human bloodstains on Troublefield's clothes or shoes. In contrast, these types of physical evidence linked defendant and two others directly to the murders. The circumstantial evidence suggesting Troublefield's involvement was not physical evidence, but eyewitness testimony.

The prosecutor was clearly attempting to distinguish the physical evidence presented in the case from the testimonial evidence. This distinction does not appear to be inappropriate considering the large

amount of physical evidence admitted: clothing, shoes, weapons, blood samples, fingerprints, and the victims' possessions. Furthermore, it is obvious that the prosecutor's argument was drawing a distinction between the direct physical evidence and testimonial evidence, since he immediately pointed out to the jury that the various sightings of Troublefield walking on the road some distance away from the crime scene and the location where he was picked up by a sheriff's deputy made it "virtually impossible for Glenn Troublefield to have been present when the victims were killed." Finally, the prosecutor argued: "But even if some part of you still nags at you and tells you that Glenn Troublefield in some way was involved, that still in no way expiates Eugene DeCastro." Viewed in the context of the evidence presented in this case, the prosecutor's argument did not violate defendant's statutory or constitutional rights. Consequently, this assignment of error is rejected.

[3] In his third assignment of error, defendant contends that the trial court committed reversible error in overruling his objection to the admission of a statement defendant made while he was in police custody at the Sheriff's Department. Defendant contends that this statement, made after he had requested an attorney, was prompted by police conduct of an interrogating nature in violation of his federal and state constitutional rights to be free from self-incrimination and to have the assistance of counsel. We disagree.

Detective Berube and SBI Agent McDougall testified regarding the circumstances and substance of an inculpatory statement made by defendant at the jail. After defendant was arrested during the early morning hours of 1 March 1992, he was brought to the Johnston County Sheriff's Department for processing. Defendant was informed of his right to counsel before questioning, and he requested a lawyer. Detective Berube took defendant to the jail area of the Johnston County Sheriff's Department to collect his clothing as evidence. Defendant was instructed to remove everything from his pockets. According to Detective Berube, when defendant placed $13.00 on a bench and was asked how much money he had, defendant made the statement that some of the money was his. Defendant made a bare objection to Detective Berube's testimony regarding defendant's statement but gave no basis for the objection and did not request *voir dire*.

Agent McDougall also testified regarding defendant's statement. According to Agent McDougall, after defendant had completely dis-

robed and the officers had collected all of his clothing, Detective Berube asked Agent McDougall "if it was okay for [defendant] to keep the money." Agent McDougall turned back toward defendant and saw some money in defendant's top pocket. Before McDougall could say anything, defendant said, "I had some of my own money, too, now." Defendant contends that because the detective's question, made in defendant's presence while he was in police custody, could have been perceived by defendant as seeking a response, it was the functional equivalent of police interrogation in violation of his constitutional rights.

The law is well established that once an accused expresses the desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d, 378, 386 (1981); *accord State v. Clark*, 324 N.C. 146, 154, 377 S.E.2d 54, 60 (1989). Once the right to counsel has been invoked, the admissibility of defendant's in-custody statement hinges on whether the statement was made in response to improper questioning or its functional equivalent. The test for determining whether improper interrogation occurred was established in *Rhode Island v. Innis*, 446 U.S. 291, 64 L. Ed. 2d 297 (1980):

> A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Id.* at 301-02, 64 L. Ed. 2d at 308 (footnotes omitted).

Applying this test to the instant case, defendant's statement that he had some of his "own money, too," was not the result of interrogation in derogation of defendant's right to have an attorney present during questioning. The question by Detective Berube regarding whether defendant could keep the money from his pocket was not directed to defendant, but to Agent McDougall. Furthermore, defendant made his statement in the course of general conversation while turning over his clothing and property in exchange for an inmate jumpsuit. The exchange between the officers about the money in defendant's possession did not constitute an initiation of questioning or badgering of defendant with words or actions reasonably likely to

elicit an incriminating response from defendant. *Id.* Therefore, defendant's statement was properly admitted into evidence, and this assignment of error is rejected.

[4] In his fourth assignment of error, defendant contends that the trial court committed reversible error in admitting Glenn Troublefield's testimony that he was afraid of defendant. Defendant contends that this testimony constituted inadmissible character evidence which greatly prejudiced him in the eyes of the jury and entitles him to a new trial. We disagree.

Glenn Troublefield testified for the State regarding defendant's activities hours before the murders in this case. Troublefield testified that he, defendant, and Chris Goode went for a ride with George Goode around 5:20 p.m. on the day of the murders. Troublefield described the other three men assaulting and robbing a stranger on the road. He further described how the vehicle's driver, George Goode, was playing "chicken" with other vehicles as he sped down the road. When George's vehicle ended up in a ditch, he had some men in a pickup truck pull it out. Then, George, Chris, and defendant went to a store and bought some wine. When Troublefield asked to be taken home, George refused and told him to stay with them and not be scared. The Goode brothers and defendant drank the wine as they drove down the road and began acting "crazy." Eventually, George drove his vehicle into a ditch near the Dallas Mobile Home Park. Troublefield testified that he refused to help the others get the vehicle out of the ditch.

The prosecutor then asked Troublefield why he did not help defendant and the other men remove the vehicle from the ditch. Troublefield explained that he refused to help the men because he "wanted to go home" and was "scared to death." The prosecutor next asked Troublefield why he was scared. Defendant objected to this question, and the trial court overruled the objection. Troublefield answered, "Because they were acting crazy."

After examining the totality of Troublefield's testimony, we cannot agree with defendant that this testimony constituted inadmissible character evidence under N.C. R. Evid. 404(a). Rather than signalling to the jury that defendant was a violent person or impermissibly showing his bad character as defendant contends, this testimony was essentially *res gestae* evidence, or evidence establishing the context or chain of circumstances of the crimes.

Troublefield's testimony explained why he was found walking away from the crime scene and provided evidence confirming the state of mind, method of operation, and course of conduct of defendant and his cohorts. Evidence of a criminal defendant's prior bad acts is admissible if it constitutes part of the history of the event or enhances the natural development of the facts. *State v. Agee*, 326 N.C. 542, 547-48, 391 S.E.2d 171, 174 (1990). Accordingly, we reject defendant's fourth assignment of error.

## SENTENCING PROCEEDING

[5] In his first sentencing issue, defendant contends the trial court erred in instructing the jury that it must be unanimous in its answers to Issue Three and Issue Four on the Issues and Recommendation as to Punishment form (herein Issues and Recommendation form). Defendant contends that the trial court committed reversible error in responding to a question from the sentencing jury because the court's supplemental instruction incorrectly informed the jury that it could not answer "no" to Issue Three or Four on the written Issues and Recommendation form unless all twelve jurors concurred in the negative answer. Defendant contends that this instruction: (i) violated the law of North Carolina, (ii) irreparably prejudiced him by reducing the State's burden of proof to justify a death sentence, (iii) improperly coerced a sentencing recommendation of death, and (iv) deprived him of his federal and state constitutional rights to due process of law and freedom from cruel and unusual punishment. Defendant argues that these violations entitle him to a new sentencing proceeding.

Defendant and the State both agree that the wording on the Issues and Recommendation form and the original jury instructions in this case were correct. Issue Three on ' the Issues and Recommendation form submitted to the jury was as follows:

Do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances found is, or are, insufficient to outweigh the aggravating circumstance or circumstances found?

The trial court instructed the jury:

If you unanimously find, beyond a reasonable doubt, that the mitigating circumstances are insufficient to outweigh the aggravating circumstances found, you would answer issue number three yes. If you do not so find, or if you have a reasonable doubt as to whether or not they do, you would answer issue three no.

STATE v. DeCASTRO

[342 N.C. 667 (1996)]

Issue Four on the Issues and Recommendation form read as follows:

> Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances you found is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by one or more of you?

The trial court instructed the jury:

> The State must also prove beyond a reasonable doubt that such aggravating circumstances are sufficiently substantial to call for the death penalty and before you may answer issue four yes, you must agree unanimously that they are.

After approximately four hours and twenty minutes of deliberations, the jury sent a question to the trial court regarding nonunanimous answers. This question, as written by the jury foreperson, read: "I put down an answer we did not unanimously agree on. Do we need another copy for the record?" The trial court addressed the jury's question as follows:

> Mr. Flood, I'm going to let y'all retire and resume your deliberations. To the extent that you need to strike through some answer you've already recorded, just mark through it and record the correct answer when you reach a point where you feel like the jurors are unanimous in their agreement on what you [sic] answer is.

> With regard to the issues, issues one, two, three and four. *The jury must be unanimous in their decision on what the answer to that issue is, as to one, three and four.* Number two, if a single juror finds a single mitigating circumstance, then obviously you would answer that yes. So, the jury does not have to be unanimous about the second issue, but *you do have to be unanimous about your answer to the other three issues.*

(Emphases added.) The record discloses that the jury then changed a "no" answer to a "yes" on Issue Three of the Issues and Recommendation form for the murder of Leon Batten. Defendant contends that the trial court erred in giving this supplemental instruction because the instruction incorrectly informed the jury that *any* answer to Issue Three or Issue Four must be unanimous.

STATE v. DeCASTRO

[342 N.C. 667 (1996)]

Since defendant did not object to the challenged supplemental instruction, we consider the merits of this issue under a plain error analysis. *State v. Allen*, 339 N.C. 545, 555, 453 S.E.2d 150, 155 (1995). To constitute plain error, an instructional error must have had a probable impact on the jury's decision. *Id.* at 555, 453 S.E.2d at 155-56 (quoting *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379-80 (1983)). Defendant, therefore, " 'must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result.' " *Id.* at 555, 453 S.E.2d at 156 (quoting *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)).

The unanimity question raised in this issue was recently decided by this Court in *State v. McCarver*, 341 N.C. 364, 462 S.E.2d 25 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 482 (1996), and *State v. McLaughlin*, 341 N.C. 426, 462 S.E.2d 1 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996). Based on our decisions in *McCarver* and *McLaughlin*, we hold that when responding to the jury's question, the trial court did not err in informing the jurors that they must be unanimous in their answers to Issues Three and Four. Although defendant argues that the supplemental instruction was in conflict with the initial instruction, the jury's question demonstrates that the jury understood that its answer to Issue Three must be unanimous. The written question sent to the judge by the foreman read: "I put down an answer we did not unanimously agree on. Do we need another copy [referring to the Issues and Recommendation form] for the record?" The trial judge, of course, did not know on what issue or in what manner an answer had been incorrectly recorded and appropriately made no effort to ascertain this information. Obviously, had the jurors thought a "no" answer did not have to be unanimous, they would not have asked the specific question they asked. This assignment of error is overruled.

[6] Defendant next contends that the trial court erred by failing to submit the statutory mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. N.C.G.S. § 15A-2000(f)(6) (Supp. 1995). This argument is based on the evidence of defendant's alcohol consumption. At trial defendant did not request submission of this statutory mitigating circumstance, but requested a nonstatutory mitigating circumstance that defendant was under the influence of alcohol on the date of the murders. The trial court submitted this requested nonstatutory mitigating circumstance.

The rule is that the trial court must submit any statutory mitigating circumstance supported by the evidence. N.C.G.S. § 15A-2000(b); *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988). In the present case the only evidence of defendant's intoxication was Glen Troublefield's testimony that defendant was "acting crazy," that he and the Goodes were driving wildly, and that the group had purchased and drunk a bottle of wine. An almost empty wine bottle with defendant's fingerprint on it was found at the scene. Nothing in the record suggests how much alcohol defendant consumed, and no expert testimony or other evidence was introduced to show that defendant's capacity to appreciate the criminality of his conduct was impaired. The mere consumption of some alcohol is not enough to warrant submission of the (f)(6) mitigating circumstance. *State v. Goodman*, 298 N.C. 1, 32, 257 S.E.2d 569, 589 (1979); *see also State v. Hunt*, 330 N.C. 501, 514-15, 411 S.E.2d 806, 813 (holding that it was not error not to submit alcohol consumption as a mitigating circumstance where the evidence showed defendant shared a fifth of whiskey with others on the day of the murder, but no evidence showed how much defendant had consumed, and the jury could only speculate as to the effect of defendant's alcohol consumption on his abilities), *cert. denied*, 505 U.S. 1226, 120 L. Ed. 2d 913 (1992); *State v. Allen*, 323 N.C. 208, 230, 372 S.E.2d 855, 868 (1988) (holding that the fact defendant consumed some beers and took some drugs was insufficient evidence to demonstrate defendant's impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990); *State v. Williams*, 305 N.C. 656, 687, 292 S.E.2d 243, 262 (stating the legislature did not intend that the mere ingestion of alcohol be a mitigating circumstance), *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). On this record the trial court did not err in failing to submit the statutory (f)(6) mitigating circumstance.

[7] Defendant next argues that the trial court erred in its supplemental instruction to the jury given in response to a question from the jury. During jury deliberations, the jury asked the following question in writing:

> Was 13 based on proven evidence or anything that we feel like could arise from the evidence that have [sic] mitigating value?

Number 13 on each of the Issues and Recommendation forms was the catchall mitigating circumstance and read, "[a]ny other circumstance or circumstances arising from the evidence which one or more jurors

deems to have mitigating value." *See* N.C.G.S. § 15A-2000(f)(9). In response to the jury's question, the trial court instructed:

> In that regard, ladies and gentlemen, you are to consider all of the evidence that has been presented in the trial, both the first part of the trial and the sentencing portion of the trial, and you are to evaluate that evidence, and you may consider any fact that can be reasonably and logically inferred from that evidence. You may consider any fact that can reasonably and logically be inferred from evidence that you've heard. And if in doing so one or more of you find that a particular [fact] exists and that it has mitigating value, and you find that by a preponderance of the evidence, then you would answer issue 13 yes. Therefore, whether it's been mentioned or not, anything that can reasonably and logically be inferred to be true as a fact in this case, from the evidence that you've heard, you may consider in deciding the answer to issue number 13. That's about all I can tell you in terms of answering your question.

Defendant contends that the trial court should have repeated the portion of its original sentencing charge which informed the jury that it could consider anything as mitigating that arose "from the evidence, and the totality of this case, anything . . . that you have seen in this courtroom that you deem to have mitigating value." Defendant argues that the instruction given unfairly limited the jury's consideration of potential mitigation and impinged on defendant's state and federal constitutional rights to a fair sentencing hearing and to freedom from cruel and unusual punishment. We disagree.

The question submitted by the jury was limited to number 13 under Issue Two, namely, the catchall mitigating circumstance. Further, the question clearly related to inferences to be drawn from the evidence as opposed to direct proof of a fact. Viewed in the context of the language of the catchall, the trial court's answer was proper and in no way contradicted the earlier instruction that the jurors could take into consideration anything they had observed in the courtroom which they deemed to have mitigating value. The present case is distinguishable from *State v. McNeil*, 327 N.C. 388, 395 S.E.2d 106 (1990), *cert. denied*, 499 U.S. 942, 113 L. Ed. 2d 459 (1991), relied upon by defendant. In *McNeil* the jury gave only one answer as to all the possible mitigating circumstances including the catchall. In this case, however, the jury gave thirteen separate answers, one for each mitigating circumstance submitted. Number 12 under Issue Two

related to whether defendant had shown remorse, and no juror found this mitigating circumstance. Hence, defendant's contention that the supplemental instruction prohibited the jury from considering demeanor evidence as it relates to remorse is without merit since the question asked by the jury specifically pertained to number 13, the catchall. Finally, we note that at least one juror found the catchall mitigating circumstance as to both murders. This assignment of error is overruled.

**[8]** Defendant next argues that the trial court erred in answering the jury inquiry whether life meant life in prison without the possibility of parole. The trial court answered in accordance with the pattern jury instructions as follows:

> I instruct you that the question of eligibility for parole is not a proper matter for you to consider in recommending punishment, and it should be eliminated entirely from your consideration and dismissed from your minds. In considering whether to recommend death or life imprisonment, you should determine the question as though life imprisonment means exactly what the statute says, imprisonment for life in the State's prison.

Defendant argues that this instruction did not accurately respond to the question and suggested that a life sentence did not mean imprisonment for life. The amendment to N.C.G.S. § 15A-2002 which became effective 1 October 1994 applies prospectively and has no applicability to this case. This Court has repeatedly addressed the effect of *Simmons v. South Carolina*, —— U.S. ——, 129 L. Ed. 2d 133 (1994), and has determined that the pattern jury instruction given by the trial court is not constitutionally infirm since prior to the effective date of the amendment to N.C.G.S. § 15A-2002, a defendant could not be parole ineligible in North Carolina. *See State v. Price*, 337 N.C. 756, 448 S.E.2d 827 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 224 (1995). Defendant has offered no new argument persuading us to depart from the Court's earlier decisions, and this assignment of error is overruled.

**[9]** In his next argument defendant contends the trial court erred in instructing the jury that it could determine if defendant's age had mitigating value. Defendant argues that if the evidence was sufficient to submit age as a mitigating circumstance, then the trial judge was required as a matter of law to submit the statutory circumstance since the legislature has determined that age has mitigating value.

To support this argument defendant relies on his chronological age, twenty-eight, and the testimony by his mother concerning his background and development. "The trial court is not required to instruct upon a statutory mitigating circumstance unless substantial evidence has been presented to the jury which would support a reasonable finding by the jury of the existence of the circumstance." *State v. Laws*, 325 N.C. 81, 110, 381 S.E.2d 609, 626 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990). Moreover, chronological age is not determinative of this mitigating circumstance. *Id.* at 113, 381 S.E.2d at 628. In the present case defendant's mother's testimony did not show any special or unusual circumstances suggesting that defendant possessed limited intellectual or emotional maturity necessary to require submission of the age mitigating circumstance. To the contrary, the evidence shows that although defendant dropped out of high school, he had normal intelligence and academic success. Accordingly, we conclude that on the record before this Court, defendant failed to produce the necessary substantial evidence to warrant submission of the (f)(7) statutory mitigating circumstance. Hence, error, if any, by the trial court in allowing the jury to consider whether defendant's chronological age alone had mitigating value was error which benefited defendant. This assignment of error is overruled.

[10] In his next argument defendant contends the trial court erroneously instructed the jury on the concept of mitigation. The judge instructed the jury as follows:

A mitigating circumstance is a fact or a group of facts which do not constitute a justification or an excuse for a killing, nor reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing [or making it] less deserving of extreme punishment than other first degree murders, or making this defendant less deserving of the extreme punishment than other first degree murderers.

Defendant contends that this definition unfairly limited the jury's consideration of defendant's character and background as well as the circumstances surrounding the killing which a juror might find to be a basis for a sentence less than death. The instruction, according to defendant, focused the jurors' attention toward the killing itself rather than on the defendant as an individual.

The instruction as given was virtually identical to the pattern jury instructions and included in addition to the above-quoted language an instruction that in considering Issue Two, the jurors were "to consider as a mitigating circumstance any aspect of the defendant's character or his record." The jury was also given an instruction on the catchall circumstance which permitted consideration of any other circumstance or circumstances arising from the evidence which one or more jurors deemed to having mitigating value.

Based on the authority of *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 650 (1995), where defendant made essentially the same contentions regarding the pattern jury instruction on mitigation, we hold that the instruction as given was a correct statement of the law. *Id.* at 121-22, 443 S.E.2d at 327-28. Accordingly, the trial court did not err, and defendant is entitled to no relief on this assignment of error.

[11] Defendant's next contention is that the trial court erred in allowing the jury to find and consider two aggravating circumstances based on the same evidence. Specifically, defendant argues that as to the killing of Margaret Batten, the jury should not have been permitted to find that the killing was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9), and also that the killing occurred during a course of conduct which included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). Defendant asserts that the evidence supporting the (e)(9) circumstance as to Margaret Batten's death "centered around her witnessing the murder of her husband as she too was beaten, stabbed, and killed." According to defendant this "same conduct provided the impetus for the submission and finding of a murder in the course of a violent act perpetuated on another person." We disagree.

Submission of the (e)(9) aggravating circumstance may be appropriate where the evidence shows that the killing was "physically agonizing or otherwise dehumanizing to the victim" or the killing was " 'conscienceless, pitiless, or unnecessarily torturous to the victim.' " *State v. Gibbs*, 335 N.C. 1, 61, 436 S.E.2d 321, 356 (1993) (quoting *State v. Brown*, 315 N.C. 40, 65, 337 S.E.2d 808, 826-27 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988)), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994). In the present case the evidence showed that Margaret Batten had been repeatedly stabbed with two different knives. The medical examiner who per-

formed the autopsy testified that there were twenty-three stab wounds on Margaret Batten's body. Eight of the wounds were on the head and neck; the remainder were in the chest and abdominal area. Her abdomen was ripped open, exposing her intestines. Injuries resulting from the stabbings included broken ribs; cuts through the esophagus; and cuts through the stomach, large intestines, spleen, right kidney, and liver. The medical examiner testified that Margaret Batten did not die a quick, painless death, but rather she probably remained conscious during the five to ten minutes it took for her to die. Besides the wounds, Margaret Batten's blue jeans and panties had been pulled to her ankles; her shirt had been torn open and her fastened brassiere pulled up above her breasts, leaving her breasts, torso, and lower body bare. Hence, abundant evidence supports the especially heinous, atrocious, or cruel aggravating circumstance without considering the violent course of conduct which resulted in Leon Batten's murder or the emotional trauma Margaret Batten must have experienced when she saw what had happened to her husband.

The evidence supporting the (e)(11) course of conduct aggravating circumstance is also entirely different from the evidence recited above supporting the (e)(9) circumstance. The evidence that defendant engaged in a course of conduct involving violence to another person was that prior to killing Margaret Batten, defendant robbed, beat, and murdered Leon Batten. *See Gibbs*, 335 N.C. at 60-61, 436 S.E.2d at 355.

Defendant's efforts to stretch the reasoning of *State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446 (1987), to provide him relief misses the mark. *Quesinberry* involved application of the same evidence to find both the (e)(5) aggravating circumstance that the capital felony was committed while defendant was committing robbery and the (e)(6) aggravating circumstance that the capital felony was committed for pecuniary gain. In the present case different evidence supports the (e)(9) and the (e)(11) aggravators, and submission of both was entirely proper.

[12] Defendant next contends that the instruction on the especially heinous, atrocious, or cruel aggravating circumstance was constitutionally flawed in that the instruction (i) did not limit this circumstance to defendant's personal conduct or culpability, (ii) was unconstitutionally vague, and (iii) offered no guidance to the sentencing jury. The argument concerning individualized consideration in the sentencing process has previously been addressed and resolved

**STATE v. DeCASTRO**

[342 N.C. 667 (1996)]

against defendant in *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). In *McCollum* the Court stated:

> As authority for his argument, the defendant relies upon *Enmund v. Florida*, 458 U.S. 782, 73 L. Ed. 2d 1140 (1982). In *Enmund*, the Court held that capital punishment must be tailored to the particular defendant's personal responsibility and moral guilt. *Enmund*, 458 U.S. at 801, 73 L. Ed. 2d at 1154. However, the defendant's reliance on *Enmund* is misplaced. *Enmund* involved the propriety of a death sentence, based upon a felony murder conviction, imposed upon a defendant who did not commit the homicide, was not physically present when the killing took place, and did not intend that a killing take place or that lethal force be employed.

*McCollum*, 334 N.C. at 222, 433 S.E.2d at 151. In the present case, based on the trial court's instructions, the jury had determined that defendant personally or acting with his partners had a common purpose to murder Margaret Batten and had the specific intent to commit the murder. The evidence showed that defendant was present and actively participated in the murder.

Further, as to defendant's arguments that the instruction was unconstitutionally vague and failed to provide guidance in that the term "brutality" was facially vague and the narrowing phrases were referenced in the disjunctive, this Court has again previously addressed and rejected each of these contentions. *See State v. Sexton*, 336 N.C. 321, 372-73, 444 S.E.2d 879, 908, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 429 (1994); *State v. Syriani*, 333 N.C. 350, 390-92, 428 S.E.2d 118, 140-41, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 341 (1993). Defendant has offered no new argument persuading this Court to overturn established precedent, and this assignment of error is overruled.

**[13]** Defendant next assigns as error the trial court's instruction on the (e)(3) aggravating circumstance, whether defendant had previously been convicted of a crime involving the use or threat of violence to another person. N.C.G.S. § 15A-2000(e)(3). In instructing on this aggravating circumstance, the trial court stated:

> This appears as number one on both the Margaret Batten form and the Leon Batten form. I instruct you that voluntary manslaughter and common law robbery are, by definition,

STATE v. DeCASTRO

[342 N.C. 667 (1996)]

felonies involving the use or threat of violence to the person of another. A felony involves the use or threat of violence to the person [of] another if the perpetrator kills or inflicts physical injury on the victim or threatens to do so in order to accomplish his criminal act.

A person has been previously convicted if he has been convicted and not merely charged, and if his conviction is based on conduct which occurred before the events out of which this murder, or these murders, arose.

If you find from the evidence, beyond a reasonable doubt, that prior to February 29th of 1992, the defendant had been convicted of common law robbery or voluntary manslaughter, or both, and that the defendant used or threatened to use violence to the person in order to accomplish these criminal acts, and that the defendant killed Margaret and Leon Batten after he committed and was convicted of these prior felony offenses, then you would find this aggravating circumstance. I say again, if you find all those things from the evidence, beyond a reasonable doubt, then you would find this aggravating circumstance to exist, and you would so indicate by having your foreman write "yes" in the space provided after the first listed aggravating circumstance on both forms.

Defendant contends that the jury must be unanimous as to the theory upon which an aggravating circumstance is based and that giving the instruction in the disjunctive denied defendant's state constitutional right to a unanimous verdict. Defendant also contends that failure to require unanimity as to the specific act defendant committed also violates defendant's right to proof beyond a reasonable doubt. Defendant further asserts that the disjunctive instruction failed to genuinely narrow the class of death-eligible defendants. To support these arguments defendant cites cases requiring a unanimous verdict to convict a defendant of the offense charged, particularly *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977). Defendant's reliance on these cases is misplaced. That defendant had been previously convicted of common law robbery and voluntary manslaughter is not disputed, nor is the fact that both common law robbery and voluntary manslaughter involve the use or threatened use of violence against another person. Hence, the criteria upon which this aggravating circumstance depends have been met. *See State v. Goodman*, 298 N.C. 1, 22, 257 S.E.2d 569, 583. So long as the crimes for which defendant had been

previously convicted were felonies and involved the use or threatened use of violence against another person, the specific crime which supports this aggravating circumstance is immaterial. This assignment of error is overruled.

[14] In his next assignment of error, defendant contends the trial court erred by failing to instruct the jurors that "preponderance of the evidence" means proof that it is more likely than not that a mitigating circumstance exists. In instructing the jury, the trial court gave the following instruction:

> The defendant has the burden of persuading you that a given mitigating circumstance exists. The existence of any mitigating circumstances must be established by a preponderance of the evidence. That is, the evidence taken as a whole must satisfy you, not beyond a reasonable doubt, but simply satisfy you that a mitigating circumstance exists.

Defendant argues that the jury might have misunderstood the term "satisfies" to mean a greater degree of proof than "more likely than not." Defendant contends that this ambiguous instruction violated defendant's procedural due process rights and his Eighth Amendment rights as the instruction did not give the "guided discretion" required by *Gregg v. Georgia*, 428 U.S. 153, 49 L. Ed. 2d 859 (1976). Defendant's argument fails for two reasons.

First, defendant specifically requested the following instruction:

> [T]he evidence, taken as a whole must satisfy you—not beyond a reasonable doubt, but simply satisfy you—that any mitigating circumstance exist[s].

Second, this Court has addressed these very arguments and decided this issue contrary to defendant's position. *See State v. Payne*, 337 N.C. 505, 532-33, 448 S.E.2d 93, 109 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 292 (1995). Defendant has offered no new argument persuading this Court that the use of the word "satisfy" increases defendant's burden of proof. Therefore, we "continue to adhere to our view that 'satisfies' denotes a burden of proof consistent with a preponderance of the evidence. It is for the jury to determine what evidence satisfies it, and the jury is presumed to have understood the term 'satisfy,' which is plain English." *Id.* at 533, 448 S.E.2d at 109.

**[15]** Defendant next contends that the trial court's instructions for weighing mitigating and aggravating circumstances in Issue Three unconstitutionally prohibited an individual juror from considering mitigating circumstances found in Issue Two. Issue Three is, "Do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances found is, or are, insufficient to outweigh the aggravating circumstance or circumstances found?" The instruction given by the trial court was as follows:

> I instruct you, if you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances. When deciding this issue, each juror may consider any mitigating circumstance or circumstances that the jury determines to exist by a preponderance of the evidence in issue two.

The trial court was giving the pattern jury instruction which has been approved by this Court and which reads in pertinent part: "[E]ach juror may consider any mitigating circumstance or circumstances that the juror determined to exist . . . ." N.C.P.I.—Crim. 150.10, at 42 (1995).

In this case, as in *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306, it is impossible to discern whether the trial court had a *lapsus linguae* or whether the transcript contains an error. Just as in *Robinson* the jurors here were clearly instructed regarding Issue Two that only one or more of the jurors was required to find that the mitigating circumstance existed and that it had mitigating value. For Issue Three the jurors were then told, "if you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances." This instruction did not preclude any juror from considering in Issue Three mitigating evidence that that juror alone found in Issue Two. Defendant failed to object to this instruction; hence, error, if any, is reviewable only for plain error, *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378. Even assuming *arguendo* that the instruction was error, defendant has not met the heavy burden of demonstrating that the error was so fundamental and grave that a different result was likely to have occurred had the error not been committed. Defendant is not entitled to relief based on this assignment of error.

**[16]** Defendant next contends that the trial court erred in its instruction on Issue Four by failing to instruct that the jury as a whole could consider any mitigating circumstance found by any one juror at Issue

**STATE v. DeCASTRO**

[342 N.C. 667 (1996)]

Two. Defendant argues that this instruction violates the rule in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), that a sentencing jury may not be precluded from giving full and free consideration to evidence of mitigation. Again, this issue has been resolved contrary to defendant's position by this Court. In *State v. Lee*, 335 N.C. 244, 439 S.E.2d 547, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 162 (1994), the Court stated:

> Nor are we persuaded by the defendant's contention that *McKoy* requires a juror to consider, at Issue Three and Issue Four, those mitigating circumstances which he or she did not find, but which were found by one or more other jurors. Were we to adopt this reading of *McKoy* and its progenitors, we would create an anomalous situation where jurors are required to consider mitigating circumstances which are only found to exist by a single holdout juror. We do not believe that the decisions in *McKoy* or *Mills* intended this anomalous result. The jury charge given in this case did not preclude the jurors from giving effect to all mitigating evidence they found to exist. This charge eliminates the defect found unconstitutional in *McKoy*.

*Id.* at 287, 439 S.E.2d at 570; *see also State v. Robinson*, 336 N.C. at 119-21, 443 S.E.2d at 326. In the present case, as in *Lee* and *Robinson*, the trial court gave the pattern jury instruction as to Issue Four. Defendant having presented no new argument, we adhere to our prior decisions on this issue; and this assignment of error is overruled.

[17] By his next assignment of error, defendant contends that the trial court erred in instructing the jury that as to nonstatutory mitigating circumstances, it must first determine whether the circumstance existed and then whether that circumstance had mitigating value. Defendant contends that once jurors find that a nonstatutory mitigating circumstance exists, they cannot under *Eddings v. Oklahoma*, 455 U.S. 104, 114, 71 L. Ed. 2d 1, 11 (1982), give it no weight. This Court has previously rejected this argument. *See State v. Hill*, 331 N.C. 387, 417-18, 417 S.E.2d 765, 780 (1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993). This assignment of error is overruled.

[18] By his next assignment of error, defendant argues that the State improperly used peremptory challenges to remove jurors who expressed hesitancy or reservations about the death penalty, thereby violating defendant's constitutional rights under *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968). Defendant concedes,

STATE v. DeCASTRO

[342 N.C. 667 (1996)]

however, that this Court has previously rejected this argument in *State v. Allen,* 323 N.C. 208, 372 S.E.2d 855. *See also State v. Jones,* 336 N.C. 229, 260, 443 S.E.2d 48, 64, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 423 (1994); *State v. Bacon,* 326 N.C. 404, 390 S.E.2d 327 (1990). As defendant has cited no new argument persuading this Court to overrule its established precedent, this assignment of error is overruled.

**[19]** Defendant next argues that the trial court erred in allowing death-qualification by excusing for cause certain jurors who expressed an unwillingness to impose the death penalty and by denying defendant's request for a separate sentencing jury. Defendant argues that the process of death-qualification results in a jury that is biased in favor of the prosecution and prone to find defendant guilty. Defendant acknowledges, however, that this Court has previously ruled against defendant's position on this issue. *See State v. Gladden,* 315 N.C. 398, 340 S.E.2d 673, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Avery,* 299 N.C. 126, 261 S.E.2d 803 (1980). Defendant has presented no compelling reason why this Court should reexamine this issue, and this assignment of error is overruled.

**[20]** Defendant next argues that the pattern jury instruction imposing a duty upon the jury to return a recommendation of death if it finds that the mitigating circumstances were insufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to call for the death penalty is unconstitutional. Defendant acknowledges that this Court has ruled to the contrary in *State v. McDougall,* 308 N.C. 1, 301 S.E.2d 308, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 173 (1983). This assignment of error is overruled.

**[21]** By his next assignment of error, defendant argues that the trial court erred in instructing the jury that a knife was a dangerous weapon as a matter of law in that the instruction created a conclusive presumption on an element of the offense and relieved the State of its burden of proof in violation of defendant's right to due process of law. Defendant requests this Court to reconsider its prior decision rejecting this argument in *State v. Torain,* 316 N.C. 111, 340 S.E.2d 465, *cert. denied,* 479 U.S. 836, 93 L. Ed. 2d 77 (1986), but defendant has offered no new argument in support of this request. This assignment of error is overruled.

**[22]** Defendant next contends that the North Carolina death penalty statute is unconstitutional; is applied arbitrarily, capriciously, and whimsically; and is imposed in a racially discriminatory manner. Defendant concedes, however, that this Court has consistently upheld the constitutionality of the death penalty statute against such challenges. *See State v. Jones*, 336 N.C. 229, 443 S.E.2d 48. This assignment of error is overruled.

**[23]** Defendant next contends that the trial court committed reversible error by submitting an aggravating circumstance that the murder of Leon Batten was committed while defendant was engaged in the commission of a robbery since this aggravating circumstance duplicated elements of the murder conviction in violation of defendant's constitutional and statutory rights. Defendant argues that for the jury to find an aggravating circumstance based upon evidence supporting a theory of guilt for the murder was inappropriate. Defendant acknowledges that in this case the jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and felony murder. Defendant argues, though, that the instructions on the aggravating circumstance did not differentiate between applying the aggravating circumstance to murder based upon premeditation and deliberation and murder based upon the felony rule. This Court has consistently held that the merger rule applicable where defendant is convicted of felony murder does not apply when defendant is found guilty under the theories of both premeditation and deliberation and felony murder. *See State v. Rook*, 304 N.C. 201, 230-31, 283 S.E.2d 732, 750 (1981), *cert. denied*, 455 U.S. 1032, 72 L. Ed. 2d 155 (1982). The type instruction required by defendant's argument would be unworkable. *See, e.g., State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985). This assignment of error affords defendant no relief.

PROPORTIONALITY

**[24]** Having found no error in the guilt-innocence phase or the capital sentencing proceeding, we must undertake our statutory duty to determine whether (i) the evidence supports the aggravating circumstances found by the jury; (ii) passion, prejudice, or any other arbitrary factor influenced the imposition of the death sentence; and (iii) the death sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2).

As to the murder of Margaret Batten, the jury found defendant guilty based on premeditation and deliberation. The jury found as

aggravating circumstances that defendant had previously been convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); the capital felony was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and the murder was part of a course of conduct in which defendant engaged which included the commission of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). The jury found the statutory mitigating catchall circumstance, N.C.G.S. § 15A-2000(f)(9). As to the murder of Leon Batten, the jury found defendant guilty based on both premeditation and deliberation and felony murder. The jury found as aggravating circumstances that defendant had been previously convicted of a felony involving the use or threat of violence, N.C.G.S. § 15A-2000(e)(3); the murder was committed while defendant was engaged in the commission of robbery with a dangerous weapon, N.C.G.S. § 15A-2000(e)(5); and the murder was part of a course of conduct in which the defendant engaged which involved the commission of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). The jury found two nonstatutory mitigating circumstances, that defendant "has a close and loving relationship with his mother" and that defendant "was under the influence of alcohol on February 29, 1992." The jury also found the catchall.

We conclude that the evidence supported the aggravating circumstances which the jury found. We further conclude from our review of the record that the sentences of death were not imposed under the influence of passion, prejudice, or any other arbitrary factor. We must now determine whether the sentences of death in this case are excessive or disproportionate.

One purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Another purpose is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We compare this case to others in the pool, which we defined in *State v. Williams*, 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *State v. Bacon*, 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995), that "are roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314

S.E.2d 493, 503 (1984), *cert. denied,* 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). In seven cases this Court has determined that the death sentence was disproportionate. *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983). These cases are distinguishable from the present case inasmuch as none of these cases involved a double murder.

The fact that juries in other cases similar on their facts to the present case have returned life sentences is not, standing alone, determinative. *State v. Green,* 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994). To support his argument that this case is more nearly analogous to cases in which juries have returned life sentences, defendant relies on *State v. King,* 316 N.C. 78, 340 S.E.2d 71 (1986), and *State v. Whisenant,* 308 N.C. 791, 303 S.E.2d 784 (1983). Both these cases are, however, distinguishable from the present case. In *King* the defendant was convicted of two counts of first-degree murder based on felony murder; whereas, in the present case as to both murders defendant was convicted of premeditated and deliberate murder. In *Whisenant* the defendant was convicted of one count of first-degree murder and one count of second-degree murder; whereas, this defendant was convicted of two counts of first-degree murder. Defendant also cites the case of *State v. Crews,* 296 N.C. 607, 252 S.E.2d 745 (1979). Although the jury in *Crews* found that the murders were especially heinous, atrocious, or cruel, each victim died of a gunshot or rifle wound; whereas, here both victims in the instant case were brutally beaten and stabbed.

The aggravating circumstances found in this case have also been present in other cases in which this Court has found the sentence of death proportionate. *See State v. Moseley,* 338 N.C. 1, 449 S.E.2d 412 (1994) (jury found aggravating circumstances that the murder was part of a course of conduct including other violent crimes; that the murder was especially heinous, atrocious, or cruel; that the murder was committed while the defendant was engaged in the commission of a first-degree rape; and that defendant had been previously convicted of a violent felony), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 738 (1995); *State v. Ingle,* 336 N.C. 617, 445 S.E.2d 880 (1994) (jury found aggravating circumstances that the murder was especially heinous,

STATE v. DeCASTRO

[342 N.C. 667 (1996)]

atrocious, or cruel and that the murder was part of a course of conduct including other violent crimes), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 222 (1995). Finally, we note that the death sentence of defendant's accomplice, George Goode, was determined by this Court to be proportionate. *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995).

After comparing this case to other roughly similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously upheld the death penalty as proportionate. Considering the crimes and this defendant, we cannot conclude that the death sentences were excessive or disproportionate. We hold that defendant received a fair trial and sentencing proceeding free of prejudicial error.

NO ERROR.

Justices LAKE and ORR did not participate in the consideration or decision of this case.

Justice FRYE concurring in part, dissenting in part.

I concur in the Court's decision finding no prejudicial error in defendant's trial and convictions on two counts of first-degree murder and his conviction and sentence for robbery with a dangerous weapon. I dissent only as to the capital sentencing proceeding.

Defendant contends that he is entitled to a new capital sentencing proceeding because of several errors which occurred during his capital sentencing proceeding. I find merit in one of defendant's assignments of error and therefore vote for a new sentencing proceeding on that basis.

Defendant contends that the trial court committed reversible error in responding to a question from the sentencing jury because the court's supplemental instruction incorrectly informed the jury that it could not answer "no" to Issue Three or Issue Four on the written Issues and Recommendation As To Punishment form unless all twelve jurors concurred in the negative answer. Defendant contends the trial court erred in its supplemental instruction to the jury. Defendant argues that this error entitles him to a new sentencing proceeding. For the reasons stated in my dissenting-in-part opinion in *State v. McCarver*, I agree with defendant's argument. *See State v. McCarver*, 341 N.C. 364, 409-16, 462 S.E.2d 25, 51-55 (1995) (Frye, J., concurring in part and dissenting in part).

**STATE v. DeCASTRO**

[342 N.C. 667 (1996)]

As the majority notes, defendant and the State both agree that the wording on the Issues and Recommendation As To Punishment form and the original jury instructions in this case were correct. Issue Three on the Issues and Recommendation As To Punishment form submitted to the jury was as follows:

Do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances found is, or are, insufficient to outweigh the aggravating circumstance or circumstances found?

ANSWER: _____

The trial court instructed the jury:

If you unanimously find, beyond a reasonable doubt, that the mitigating circumstances are insufficient to outweigh the aggravating circumstances found, you would answer issue number three yes. If you do not so find, or if you have a reasonable doubt as to whether or not they do, you would answer issue three no.

Issue Four on the Issues and Recommendation As To Punishment form read as follows:

Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances you found is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by one or more of you?

ANSWER: _____

The trial court instructed the jury:

The State must also prove beyond a reasonable doubt that such aggravating circumstances are sufficiently substantial to call for the death penalty and before you may answer issue four yes, you must agree unanimously that they are.

After approximately four hours and twenty minutes of deliberations, the jury sent a question to the trial court regarding nonunanimous answers. This question, as written by the jury foreperson, read: "I put down an answer we did not unanimously agree on. Do we need another copy for the record?" The trial court addressed the jury's question as follows:

Mr. Flood, I'm going to let y'all retire and resume your deliberations. To the extent that you need to strike through some

STATE v. DeCASTRO

[342 N.C. 667 (1996)]

answer you've already recorded, just mark through it and record the correct answer when you reach a point where you feel like the jurors are unanimous in their agreement on what you [sic] answer is.

With regard to the issues, issues one, two, three and four. *The jury must be unanimous in their decision on what the answer to that issue is, as to one, three and four.* Number two, if a single juror finds a single mitigating circumstance, then obviously you would answer that yes. So, the jury does not have to be unanimous about the second issue, but *you do have to be unanimous about your answer to the other three issues.*

(Emphases added.) The record discloses that the jury then changed a "no" answer to a "yes" on Issue Three of the Issues and Recommendation As To Punishment form for the murder of Leon Batten. Defendant contends that the trial court erred in giving this supplemental instruction because the instruction incorrectly informed the jury that *any* answer to Issue Three or Issue Four must be unanimous.

The State apparently agreed with defendant that only an affirmative answer to Issue Three or Four had to be unanimous. However, the State argued that the supplemental instruction did not change the previous instructions given the jury and did not require that the jury be unanimous in order to answer Issue Three or Issue Four in the negative. In the State's brief, filed prior to the majority's reinterpretation of the unanimity requirement as to capital sentencing proceedings in *McCarver*, the State argued:

Between the pattern jury instructions and the verdict sheet itself, the jurors could have had no confusion in their minds that only an *affirmative* response to Issues Three and Four had to be unanimous. The trial court's supplemental instructions in no way contradicted or vitiated that requirement. There is no hint in the supplemental instructions that contrary to everything previously explained, the jury now had to be unanimous in its *rejection* of the findings required by Issues Three and Four. Although only a shorthand reference to the previous instructions, the court's supplemental instructions were an important reminder that unanimity was required with respect to three issues. . . . Thus, the trial court did not in any way change the original charge to the jury to require that *any* answer, yes or no, to Issues Three and Four had to be unanimous.

## STATE v. DeCASTRO

[342 N.C. 667 (1996)]

In determining whether the supplemental instruction entitles defendant to a new capital sentencing proceeding, the controlling question is whether the trial court's instructions, construed as a whole, would have misled a reasonable juror. *State v. Conner*, 335 N.C. 618, 641, 440 S.E.2d 826, 839 (1994) (holding that the trial court's instruction that ascertainment of the truth was the highest aim of a criminal trial did not mislead the jurors on the premise of reasonable doubt) (citing *State v. Garner*, 330 N.C. 273, 296, 410 S.E.2d 861, 874 (1991)).

I am unable to conclude, as the State contends, that the jurors could not have understood the supplemental instruction to require that they be unanimous in order to reject the findings required by Issues Three and Four and to answer these issues in the negative. The supplemental instruction did not inform the jury that only an affirmative answer was required to be unanimous, but rather stated that the jury must be unanimous *in its answer* to Issues One, Three, and Four. Contrary to the State's argument, a reasonable juror may well have been misled by this instruction to believe that the jury was required to be unanimous in order to answer Issue Three or Four in the negative. Indeed, this is exactly what a majority of this Court now says the instruction means.

In this case, the jury was given two alternative theories upon which to base its sentencing recommendations: (1) the law as stated in the court's initial instructions and on the Issues and Recommendation As To Punishment form, and (2) the law as stated in the supplemental instruction. Where a jury is given two alternate theories upon which to base its decision, one of which is improper, the matter must be remanded for a new proceeding. *State v Pakulski*, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987). This result is required because the appellate court is unable to determine upon which instructions the jury relied in reaching its decision and, therefore, must assume that the jury relied on the erroneous, improper instructions. *Id.* This Court is "not at liberty" to assume upon which instructions defendant's sentencing jury relied. *State v. Belton*, 318 N.C. 141, 162, 347 S.E.2d 755, 768 (1986). We "cannot assume the jury adopted a theory favorable to the state; instead, [we must] construe[] the ambiguity in favor of defendant." *Id.*

Furthermore, based on the record before the Court, I conclude that the supplemental instruction had a probable impact on the jury's recommendation of death and thus constituted error under the plain error rule. *State v. Allen*, 339 N.C. 545, 555, 453 S.E.2d 150, 155-56

(1995) (citing *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379-80 (1983)). As noted earlier, the jury sent a note to the trial court stating that it had marked a nonunanimous answer on the Issues and Recommendation form and requesting instruction on how to correct this mistake. The record reveals that, after receiving the challenged supplemental instruction, the jury changed a "no" answer to a "yes" on Issue Three of the Issues and Recommendation As To Punishment form for the murder of Leon Batten. In addition, while there is no such extrinsic evidence to indicate the jury's reliance on the supplemental instruction in its deliberations regarding the murder of Margaret Batten, I am unable to assume that the jury did not also rely on this instruction in answering Issues Three and Four on the Issues and Recommendation As To Punishment form for her murder. Accordingly, because the supplemental instruction had a probable impact upon the jury's recommendations of death for the murders of Leon Batten and Margaret Batten, these death sentences should be vacated.

For the foregoing reasons, I find no error in the guilt phase of defendant's trial. Accordingly, I would uphold defendant's convictions on two counts of first-degree murder and his conviction and sentence for robbery with a dangerous weapon. However, because I find error in defendant's capital sentencing proceeding, I vote to vacate defendant's death sentences and remand to Superior Court, Johnston County, for a new capital sentencing proceeding.

JUSTICE WHICHARD joins in this concurring and dissenting opinion.